Howard **GUENTHER**, Appellant,

v.

The **ARMSTRONG RUBBER COMPANY**.

No. 17205.

United States Court of Appeals
Third Circuit.

Argued Oct. 10, 1968.

Decided Feb. 4, 1969.

Frank J. Kernan, Pittsburgh, Pa. (P. J. McArdle, Pittsburgh, Pa., on the brief), for appellant.

James A. McGregor, Jr., Egler, McGregor & Reinstadtler, Pittsburgh, Pa., for appellee.

## OPINION OF THE COURT

Before McLAUGHLIN, STALEY and VAN DUSEN, Circuit Judges.

GERALD McLAUGHLIN, Circuit Judge.

This is an ordinary products liability negligence claim. It is in the Federal courts solely by reason of diversity of citizenship between the parties. It has one rather unusual situation which was the sole reason for the direction of verdict below in favor of the defendant and is the only question on appeal.

The facts are simple. Plaintiff-appellant is a mechanic who on May 21, 1965 was employed by Sears Roebuck & Company at its place of business in the Pittsburgh, Pennsylvania area. His main work was installing automobile tires and batteries. On the particular day he was in the process of putting four summer tires on an automobile. He first removed the four tires which were on the car. Without any complications he then put on three of the new ones. As he was adjusting the fourth tire, it exploded and threw him about six feet away. He was unconscious for a few seconds. He was later taken to the Pittsburgh Hospital where he was given emergency treatment. Robert W. Small, the Sears Service Center Manager at the time, was a witness on behalf

of the plaintiff. He said he was in the Service building when the explosion occurred and that he rushed from his office to the tire center. Mr. Guenther was on the floor about four feet from the tire machine. There was a tire on the machine. After Mr. Guenther was removed to the ambulance, Mr. Small had the tire taken to his office where he checked out its serial numbers.

In November 1966, Messrs. Drozness, plaintiff's expert, and Dunlop, the defense expert, examined the tire in Mr. Small's office. That tire was in the court at the trial. It was admitted on behalf of the defendant regarding that tire "This is our tire, our experts have told you that." Mr. Drozness was called as an expert on behalf of the plaintiff. The defense asked for an offer of proof. Plaintiff's attorney stated that Mr. Drozness "has already been identified by Mr. Small as having examined the tire involved in the accident. I am going to put him on to testify that it had a broken bead, that he went over the history of the mounting procedure used by Mr. Guenther and as a basis of that, he concludes that this is a manufacturer's defect." In response to the court's query, plaintiff's attorney continued to outline his theory of the defendant's liability, stating as to the jury, "If they accept Small's testimony and they accept the tire as given by Mr. Drozness which has a broken bead in it and if they are on the basis of a hypothetical inquiry wherein I intend to tell him, repeat how the Plaintiff put it on the machine and everything and that it had no' apparent defects (stet)." The attorney went on to say he expected to develop that in the expert's opinion the tire had not been damaged by handling and that the broken bead was a manufacturer's defect. The defense attorney objected to the testimonial offer and was sustained by the judge.

Plaintiff, as a witness, carefully outlined the steps he had taken in mounting the fourth tire. He said that after he had the tire in position and he started to put air into it "Well, it started to come up, the bead, and when it hit the rim it just let loose and exploded." The tire which Mr. Small had testified was on the machine and which he had brought to his office was a "white wall". Mr. Guenther testified that the tire he was mounting and which exploded was a "black wall". He said it was a fifteen inch and that the white wall in court was a thirteen inch. He was asked "How do you remember that the one you were mounting was black?" He answered "I just remember it was." He said he remembered it was fifteen inch because the automobile was a Chrysler "55 or 56" which takes "15 inch".

With respect to the identification of the white wall tire in court, the defense attorney, addressing the court with reference to the proposed evidence of Mr. Drozness, said "He is going to say he examined a tire, how is he going to identify it?" Plaintiff's counsel answered, "Small has already said the tire Drozness examined is the tire in Court." The judge commented "That may be sufficient identity if Drozness examined the tire Small produced." Defense counsel said, "Judge, it seems to me that they are going to rely on Small to establish the identity." The judge asked "Well, with that offer, do you object to his testimony?" Counsel replied "I certainly do your Honor." The judge sustained the motion for a directed verdict in favor of the defendant.

Later, in denying the motion for a new trial, the judge specifically found as to the tire produced by Sears Roebuck manager Small which was marked as a trial exhibit, that, "This tire was admittedly manufactured by Defendant. It is this tire which Plaintiff's expert examined and would testify was defective." The court concluded that "To allow this is to fly directly in the face of Plaintiff's clear and unequivocal denial that this was the tire that injured him. We believe that Plaintiff is bound by this testimony." The judge therefore upheld his trial conclusion of a directed verdict in favor of the defendant. The lower court decision centered entirely

upon the testimony of the plaintiff that it was a "black wall" tire which exploded, threw him six feet and rendered him unconscious. The accident happened May 21, 1965. The claim was tried in December 1966.

According to the record, apparently the first time after his accident that plaintiff saw the tire which had been taken from his tire mounting rack was, as the court stated, "a few days prior to trial." That would have been approximately a year and seven months after Guenther had been injured. Despite that and the facts that he had been knocked unconscious and taken to a hospital for emergency treatment, Guenther said that "he just remembered that it was (black)." As a result of the direction of verdict in favor of defendant immediately after plaintiff's testimony and the offer of proof on his behalf, there was no opportunity to introduce medical testimony of the nature of plaintiff's injuries and results thereof. Consequently there is nothing in the record that might give a clue to the reason for plaintiff's alleged mistaken testimony regarding the type of tire which exploded while he was adjusting it. Nor is there anything in the evidence concerning the correctness of plaintiff's description of the car being retired, as an old Chrysler. This seems also to be subject of doubt as part of the proofs for plaintiff.

Appellee seeks affirmance of the judgment here on the theory that all that was before the jury gave rise to mere conjecture; that no more than a doubt was offered in the outline of evidence for the plaintiff, which doubt the jury would have been unable to resolve. That is not this case. What we have before us is an endeavor to sustain a ruling that appellant plaintiff is bound by his own testimony as to the type of tire involved notwithstanding the extremely strong, believable submitted testimony which clearly set out the plenary fact that a particular tire manufactured by defendant-appellee injured him. Plaintiff's own evidence was obviously not a judicial admission. It is properly urged that plaintiff's testimony is simply incorrect in some of its detail; that part of what he stated is adverse to his own interest and if inaccurate is so because he is factually mistaken. This situation did not call for the summary dismissal of his claim. That action was in effect punishment for his patent honesty and for what is asserted to have been his error. In similar circumstances the Circuit Court of Appeals for the District of Columbia in Alamo v. Del Rosario, 69 App.D.C. 47, 98 F.2d 328, 331 (1938) held:

"The plaintiff in most personal injury cases was subjected, just before he was hurt, to excitement enough to explain mistakes of observation and memory. In many cases, including the present one, he was so badly hurt that he lost consciousness. And even the calmest and most disinterested witness often sees things that did not happen and remembers things that he did not see. There is no sound reason why the familiar doctrine that a party may contradict, though not impeach, his own witness, should not, if the circumstances are consistent with honesty and good faith, be applied when he is himself the witness. * * In other words, the law recognizes the fact that parties, as well as other witnesses, may honestly mistake the truth, and requires juries to find the facts by weighing all the testimony, whatever may be its source. It is rarely that two persons relate alike the same occurrence; and, in cases of accidental injury, it is not unusual for the person injured correctly to perceive and accurately to remember some of the circumstances, and to be unable to give a correct statement of all.' Hill v. West End Railway Co., 158 Mass. 458, 459, 460, 33 N.E. 582."

The above decision was followed with approval in Pennsylvania R. R. Co. v. Pomeroy, 99 U.S.App.D.C. 272, 239 F.2d 435, 443 n. 9 (1957) inter alia. See 169 A.L.R. 810n. The sound principle relied

on in those opinions and which is important in this appeal is that a plaintiff is entitled to the benefit of evidence more favorable to him than his own and in contradiction thereof regarding the details of an event. Massachusetts affirmatively endorses that rule. See Horneman v. Brown, 286 Mass. 65, 190 N.E. 735 (1939). Oregon is to the same effect, Cox v. Jones, 138 Or. 327, 5 P.2d 102 (1932). We have not seen nor has our attention been called to any decisional law to the contrary. Appellee's citations are inapposite. They do not even pretend to deal with the actual tight issue. Pennsylvania is in complete accord with the principle that a plaintiff's testimony is not a judicial admission when it " * * * relates to an objective matter about which he might honestly be mistaken, * * * where there is other evidence in the case, including the adverse party's, which is more favorable to him, even though it conflicts with his own testimony, since a party may be mistaken in his testimony, like any other witness; in other words, a party is regarded as not bound by his own testimony where there is contradictory evidence or circumstances which the trier of facts might fairly believe." Jerominski v. Fowler, Dick & Walker, 372 Pa. 291, 294, 93 A.2d 433, 435 (1953). This holding was quoted and followed in Readinger v. Gottschall, 201 Pa.Super. 134, 139, 191 A.2d 694 (1963). See also Greater Valley Terminal Corp. v. Goodman, 405 Pa. 605, 608, 176 A.2d 408 (1962).

The foundation of plaintiff's cause is that he was injured by a bursting tire which he had been adjusting on the tire machine in front of him and which was still on the machine after it had exploded. There is a disagreement between plaintiff and his witness Small as to whether that particular tire was a "black wall" or a "white wall". On such detail we do not think it is the function of the court to conclude plaintiff's cause of action by directing a verdict against him. In this instance no reason appears why a jury should not be able to readily resolve the problem in dispute at this time in this appeal.

It is also urged for appellant that his claim should have been allowed to go to the jury on his testimony about a black tire. This is founded on evidence that the defendant made from 75 to 80 per cent of the tires the particular Sears Roebuck store had for sale. It is true that the trial court in holding that plaintiff's evidence of identification failed, relied on Kamosky v. Owens-Illinois Glass Co., 89 F.Supp. 561 (M.D.Pa. 1950), affd. p. c. 185 F.2d 674 (3 Cir. 1950). It is also true that in Kamosky there was only a 10 to 15 per cent likelihood of liability of the alleged offending article. Even so as we see it there was no justification for allowing plaintiff's case on that so-called probability hypothesis to go to the jury. The latter's verdict would at best be a guess. It could not be reasonably supported.

The judgment of the District Court will be reversed and the case remanded for a new trial on the merits.