[Civ. No. 17365. Third Dist. Dec. 6, 1978.]

NANCY J. McCREERY, Plaintiff and Appellant, v.
ELI LILLY AND COMPANY, Defendant and Respondent.

**COUNSEL**

Ralph D. Drayton for Plaintiff and Appellant.

Crosby, Heafey, Roach & May, Richard J. Heafey, Peter W. Davis and John E. Carne for Defendant and Respondent.

**OPINION**

EVANS, J.—Plaintiff, Nancy J. McCreery, appeals from a summary judgment granted defendant, Eli Lilly and Company, in a product liability action. Plaintiff suffers from a benign cell disorder of the cervix described as vaginal adenosis. She alleges her condition is attributable to

her mother's use of diethylstilbestrol (DES) to prevent miscarriage during pregnancy in 1953, and inferentially, she fears that her cell disorder may become malignant.

Plaintiff now asserts liability against defendant, Eli Lilly and Company, notwithstanding her inability to identify the specific manufacturer of the pharmaceutical compound (diethylstilbestrol) taken by her mother, on the theory that defendant was one of at least 142 manufacturers of DES at the time of her conception and as such, was a jointly and severally liable tortfeasor.

By her complaint, plaintiff asserted four causes of action; the first alleged that defendants, Eli Lilly and Company (Lilly) and 30 Does, were the manufacturers and suppliers of the drug known as diethylstilbestrol, and negligently tested, manufactured, and marketed the drug; the second alleges that Lilly and 30 Does "designed, manufactured, distributed and sold a defective product, to wit, DES;" the third alleges that Lilly and the Does falsely labeled and misrepresented to plaintiff and her mother's physician material facts about the drug. The second and third causes of action seek to impose strict product liability. The fourth cause of action is for the physician's alleged malpractice in prescribing the drug.

Discovery revealed that plaintiff did not know and could not ascertain the specific pharmaceutical compound taken by her mother or the identity of the manufacturer; that her mother was unable to remember the name, color, dosage, or dosage frequency of the medication taken; that her mother had not relied upon any advertising by Lilly and did not suffer any side effects after taking the drug; that her mother's doctor could not recall the drug prescribed or whether he had preferred one manufacturer's drug over that of another; that the pharmacy that had filled the prescription had been sold upon the owner's retirement and that the records pertaining to the prescription had been destroyed; and that the only record relating to the prescription kept by the doctor during the period of pregnancy stated only that " 'Des stilbesterol 25 mgs., b.i.d. beginning the first day of her period.' . . . 'continued to take stilbesterol.' . . . 'patient was nausiated [*sic*] by two stilbesterols a day. . . .' "

Moreover, counsel for plaintiff concedes that he named Lilly as a defendant only after consulting a 1970 copy of a Physician's Desk Reference Book and finding Lilly listed as the only manufacturer of

diethylstilbestrol, but now acknowledges that the identity of the manufacturer of the specific drug taken cannot, under any circumstances, be identified.

Upon these facts, defendant moved for and was granted summary judgment.

The sole issue on appeal is whether, notwithstanding plaintiff's stipulation that she is unable to ascertain the identity of the manufacturer of the drug taken by her mother, liability may be imposed upon one of over 142 companies which, in 1953, was manufacturing that drug.

■ An important purpose and reason for the summary judgment procedure is to protect the rights of the parties from spurious or meritless complaints or answers, and to expedite litigation by avoiding needless trials. (*Buffalo Arms, Inc.* v. *Remler Co.* (1960) 179 Cal.App.2d 700 [4 Cal.Rptr. 103]; *Cone* v. *Union Oil Co.* (1954) 129 Cal.App.2d 558 [277 P.2d 464]; *Baron* v. *Mare* (1975) 47 Cal.App.3d 304, 307 [120 Cal.Rptr. 675].)

The essential aims of the summary judgment motion as well as the applicable rules to be applied in considering the motion were succinctly set forth in *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]. The court there said, "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with

caution so that it does not become a substitute for the open trial method of determining facts." (See also *Pittman* v. *Pedro Petroleum Corp.* (1974) 42 Cal.App.3d 859, 862 [117 Cal.Rptr. 220].)

The trial court's decision must be determined on the basis of the papers filed at the time the court considered the motion, not in the light of documents filed subsequent to the trial court's resolution of the issue. (*Jacobs* v. *Retail Clerks Union, Local 1222* (1975) 49 Cal.App.3d 959, 966 [123 Cal.Rptr. 309]; *Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499, 507 [125 Cal.Rptr. 872]; *Green* v. *Green* (1963) 215 Cal.App.2d 37, 46 [30 Cal.Rptr. 23]; *Dryer* v. *Dryer* (1964) 231 Cal.App.2d 441, 451 [41 Cal.Rptr. 839].)

■ Furthermore, in determining whether triable issues are presented, the court may not consider the allegations of the complaint except to the extent they are not controverted by affidavits on either side. (*Cox* v. *State of California* (1970) 3 Cal.App.3d 301, 309 [82 Cal.Rptr. 896].)

The trial court must grant a motion for summary judgment if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c.)

The proposition that justice is generally better served when cases are heard on their merits is a common axiom. There are also instances when justice will be better served by summary disposition, and this is such a situation.

■ In our consideration of the propriety of the judgment relieving defendant, Eli Lilly, from liability, we note that whether liability is asserted under a strict liability or negligence theory, the plaintiff has the burden of proving that the defendant's defective product proximately caused the injury. (See *Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 704 [106 Cal.Rptr. 1, 505 P.2d 193]; *Cronin* v. *J. B. E. Olson Corp.* (1972) 8 Cal.3d 121, 127, 134-135 [104 Cal.Rptr. 433, 501 P.2d 1153]; *Baker* v. *Chrysler Corp.* (1976) 55 Cal.App.3d 710, 715 [127 Cal.Rptr. 745]; *Culpepper* v. *Volkswagen of America, Inc.* (1973) 33

Cal.App.3d 510, 519 [109 Cal.Rptr. 110]; *Grinnell* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424, 435 [79 Cal.Rptr. 369].)

As stated previously by this court, " . . . the *Greenman* theory of strict tort liability arising from defective manufactured products is premised on proof of a causal relationship between the defect and the injury. Nothing in *Greenman* or *Vandermark* dispenses with proof of proximate cause. (See *Greenman* v. *Yuba Power Products, Inc.* [1963] 59 Cal.2d [57] at p. 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Vandermark* v. *Ford Motor Co.,* [1964] 61 Cal.2d [256], at p. 263 [37 Cal.Rptr. 896, 391 P.2d 168].)" *(Greening* v. *General Air-Conditioning Corp.* (1965) 233 Cal.App.2d 545, 549 [43 Cal.Rptr. 662].)

■ Manufacturers and designers of products are held strictly liable in tort for injuries caused by their products when the following elements are present: (1) the product is placed on the market; (2) there is knowledge that it will be used without inspection for defect; (3) the product proves to be defective; and (4) the defect causes injury to a human. (See *Baker* v. *Chrysler Corp., supra,* 55 Cal.App.3d at p. 715.) ■ Inherent in that liability thesis is the proposition that the identity of the manufacturer must be ascertained and proved.

There is no merit in any possible contention that the judicially evolved application of comparative negligence to products liability in some way obviates the necessity of a showing that the defendant's product was the proximate cause of injury.

As stated by the Supreme Court in *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162]: " . . . strict liability has never been, and is not now, *absolute* liability. As has been repeatedly expressed, under strict liability the manufacturer does not thereby become the insurer of the safety of the product's user. [Citations.] On the contrary, *the plaintiff's injury must have been* caused by a '*defect*' in the product." (Italics in original and added.) (20 Cal.3d at p. 733.) " . . . Regardless of the identity of a particular defendant or of his position in the commercial chain *the basis for his liability remains that he has marketed or distributed a defective product.*" (Italics added.) (20 Cal.3d at p. 739.)

Moreover, it is not a general rule in the field of products liability that the manufacturer of a defective product prove a negative, i.e., his noncausation of plaintiff's injuries. (See *Endicott* v. *Nissan Motor Corp.*

(1977) 73 Cal.App.3d 917, 928 [141 Cal.Rptr. 95].) It is equally true that an alleged manufacturer of a defective product need not prove the negative that it did not manufacture the product which caused plaintiff's injuries.

Furthermore, in this instance knowledge of the identity of the manufacturer was more accessible to the plaintiff; defendant, Lilly, did not participate in retail sales of DES and was not aware of the prescription for plaintiff's mother. Plaintiff's mother both knew of and possessed the prescription; had she maintained a record of it, the identity of the drug manufacturer would have been available. The doctor and the pharmacy involved were selected by plaintiff's mother, not defendant; and had the druggist's records been kept, proof of the drug's manufacturer could have been made. The mere mention of the prescription as being " 'Des stilbesterol 25 mgs., b.i.d.' " or " 'stilbesterol' " is not sufficient to establish that plaintiff's mother took defendant Lilly's compound. Defendant Lilly marketed the drug under the nonproprietary name "Diethylstilbestrol." We note that Dr. Boyers' records indicate a prescription of or use by plaintiff's mother of stilbesterol, another nonproprietary name for DES used by Rexall in marketing the drug.

 The establishment of the identity of the tortfeasor is not one of the onerous evidentiary burdens inherent in negligence actions that have been eliminated in strict products liability proceedings. In a products case, the burden of proof relating to design deficiency is shifted to the defendant only after the plaintiff makes the prima facie showing that injury was caused by the product as designed and its use. (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 431 [143 Cal.Rptr. 225, 573 P.2d 443].)

 The plaintiff must, before benefiting from the shift of the evidentiary burden, identify the manufacturer and establish the causal relation between the injury and the product. Here, plaintiff concedes her inability to meet that burden and is and will be unable to establish that defendant Lilly manufactured the drug which caused her physical disorder.

 Notwithstanding plaintiff's inability to identify the actual drug producer, she asserts for the first time on appeal that all manufacturers who produced DES, a drug allegedly hazardous to the health of both the user and female offspring, are jointly and severally liable because each manufacturer acted in concert with the other and produced the drug

according to identical standards.[1] By her pleading, plaintiff has asserted causes of action in negligence and strict product liability only. She has failed to plead a cause of action based on concert of action among drug manufacturers as a thesis for defendant Lilly's liability.

The sketchy and limited factual circumstances presented in plaintiff's argument of concerted activity are distinguishable from those in the cases upon which plaintiff relies, i.e., *Hall* v. *E. I. Du Pont De Nemours & Co., Inc.* (E.D.N.Y. 1972) 345 F.Supp. 353 and *Chance* v. *E. I. Du Pont De Nemours & Co., Inc.* (E.D.N.Y. 1972) 345 F.Supp. 353. In those cases, the manufacturers were shown to have acted in concert in fixing labeling criteria and in the establishment of marketing regulations, which resulted in the plaintiff's use and ultimate injury. The basis of liability was not predicated merely upon manufacturing activities for similar economic results.

██ "Joint and several liability is imposed in situations in which tortfeasors have acted concertedly or independently to cause an injury. Where two or more persons have acted in concert as joint tortfeasors, the basis of liability can be explained in terms of a joint enterprise, each party having acted with a common purpose so that the act of one is the act of all. Where two or more persons have acted independently, either concurrently or successively, to cause an indivisible injury, liability is predicated on the basis that each tortfeasor's conduct was a substantial factor in bringing about the loss and on the impracticality of apportioning that loss." (Fn. omitted.) (Comment, *Comparative Negligence in California: Multiple Party Litigation* (1976) 7 Pacific L.J. 770, 775-776 [see citations therein].)

Plaintiff's further citation of authorities,[2] dealing with concert of action, reveals a fundamental misconception. They deal with cases of known concerted activity where the sole uncertainty was not whether the defendant had in some way acted so as to contribute to the injury, but rather whether the defendant's difficulty in apportioning responsibility

---

[1]However, factual data by way of affidavit, declaration, deposition, or answers to interrogatories was not supplied in the summary proceeding to support that argument of counsel.

[2]*Summers* v. *Tice* (1948) 33 Cal.2d 81, 82-83 [199 P.2d 1, 5 A.L.R.2d 91] [shooting firearms]; *Orser* v. *George* (1967) 252 Cal.App.2d 660, 665 [60 Cal.Rptr. 708] [same]; *Bierczynski* v. *Rogers* (Del. 1968) 239 A.2d 218, 219 [drag race on public highway]; *Lemons* v. *Kelly* (1964) 239 Ore. 354 [397 P.2d 784, 785] [same]; *Landers* v. *East Texas Salt Water Disposal Co.* (1952) 151 Tex. 251 [248 S.W.2d 731, 732] [pollution of environment]; *Moses* v. *Town of Morganton* (1926) 192 N.C. 102 [133 S.E. 421, 422] [same].)

would preclude the innocent claimant's recovery. In those cases the defendant was known to have engaged in concerted activity by either shooting in the direction of the plaintiff, polluting the environment, or participating in a drag race on a public roadway.

 Plaintiff alleges that Lilly was liable for misrepresenting the risk of injury from using DES; however, she does not know which manufacturer supplied the drug, nor can she supply the warnings given, if any. It is incumbent upon her to show that all manufacturers misrepresented the risks inherent in the use of DES on their applications to the Food and Drug Administration. The record is without any such evidence.

Finally, we reject plaintiff's contention that simple animal tests would have revealed the risk of inherited cell disorders as this is a contention inconsistent with medical science. (See Merrill, *Compensation for Prescription Drug Injuries* (1973) 59 Virginia L.Rev. 1, 19-20; Wardell, Regulation and Drug Development (1975) 17, 19-20; Campbell, Drug Lag (1976) 6.)

Additionally, we note that if the manufacture 25 years ago of a drug that might cause inherited cell disorders is now found to be negligent, or that it resulted in a defective product, even though at the time permission to manufacture and market the product was obtained and the manufacturer complied with all appropriate and applicable regulations, absolute liability would essentially result. Such imposition is inconsistent with social policy and the law.

 Application of the comments to the Restatement Second of Torts, section 402A, to this situation compels a rejection of the imposition of liability. As the comment states, " . . . It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again, with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk." (Rest. 2d Torts, § 402A, com. k.) This section implicitly recognizes the social policy behind the development of new pharmaceuti-

cal preparations. As one commentator states, "[t]he social and economic benefits from mobilizing the industry's resources in the war against disease and in reducing the costs of medical care are potentially enormous. The development of new drugs in the last three decades has already resulted in great social benefits. The potential gains from further advances remain large. To risk such gains is unwise. Our major objective should be to encourage a continued high level of industry investment in pharmaceutical R & D [research and development]." (Schwartzman, The Expected Return From Pharmaceutical Research: Sources of New Drugs and the Profitability of R & D Investment (1975) p. 54.)

The judgment is affirmed.

Puglia, P. J., and Janes, J., concurred.

A petition for a rehearing was denied December 29, 1978, and the opinion was modified to read as printed above.