JEAN W. ELLIOTT, Plaintiff-Appellee and Cross-Appellant, *v.* CHICAGO TITLE INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.

First District (2nd Division)   No. 83—1671

Opinion filed March 20, 1984.—Rehearing denied May 7, 1984.

Susan E. Woods and William R. Yowell, both of Chicago, for appellant.

James N. Vail, of Chicago, for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Jean Elliott (Elliott) brought an action against Chicago Title Insurance Company (CTI) for damages resulting from an alleged breach of a title policy issued to her and her husband Richard Elliott. The policy showed title to their residence in joint tenancy although it was actually recorded as tenancy in common. The circuit court granted her motion for summary judgment and denied her request for attorney fees and damages. CTI appeals from the order granting summary judgment. Elliott cross-appeals from the denial of attorney fees and damages.

The issues raised by CTI include whether: (1) summary judgment was properly granted; (2) CTI's exclusion clause exculpates it from liability for mistakes in describing title; (3) a necessary party was omitted; and, (4) CTI's policy is one of indemnity rather than guaranty, thereby limiting damages to actual loss. The issue raised on the cross-appeal is whether CTI's defense was vexatious and unreasonable and its allegations and denials unreasonable and untrue so as to entitle Elliott to attorney fees and damages.

On October 26, 1956, Richard and Jean Elliott purchased and

were deeded in joint tenancy residential property from Durable Construction Company (Durable), which shall be described as "Lot 82," subject to a mortgage obtained by Durable on October 6, 1956. The proceeds of this mortgage were credited to the purchase price. Adjoining Lot 83 was sold by Durable to the Elliotts by an installment contract, secured by an installment note, to be paid in full by December 1961, at which time title to Lot 83 would be transferred to the Elliotts.

In April 1958, the Elliotts and Durable entered into an $11,215 contract for an addition to their residence, on which the Elliotts paid down $1,000 cash. Durable's 1956 mortgage on Lot 83 was released; Durable secured a new mortgage on Lots 82 and 83; and the installment note was increased. As security for the increased installment note, the Elliotts executed a quitclaim deed to Lot 82 to the construction company. In 1959, Durable resubdivided Lots 82 and 83 into Lot 1.

The Elliotts paid off the installment note in 1968 and retained their own attorney to clear title and draft a deed to Lot 1, transferring title to them from Durable. The deed did not contain essential joint tenancy language. In 1970 the attorney ordered a commitment for title insurance from CTI giving it all documents relating to the purchase and financing of the property of which he was aware, including the warranty deed conveying Lot 1 from Durable to the Elliotts. CTI issued a title insurance policy showing title in the Elliotts as joint tenants, however, and mailed it to the Elliotts' attorney on November 17, 1970.

In June 1973, the Elliotts retained a different attorney to draft their wills and a trust agreement and gave him the title policy. Assertedly relying on the policy showing their home in joint tenancy and believing it would pass to the survivor upon either's death, the attorney drafted wills and trust agreements conveying all the husband's assets to a testamentary trust, with a bank as trustee (trustee) without specifically referring to their home.

In July 1981, Richard Elliott died, and his estate was opened in Du Page County.

In March 1982, Elliott retained the previous attorney to represent her in the sale of the subject home. He prepared an installment sales contract for $90,000 between Elliott, as sole owner, and the purchasers, which both parties executed. A commitment for title ordered by the purchasers from a title company other than CTI reported that title to the property was not in joint tenancy but rather in tenancy in common. Elliott's attorney immediately notified CTI of the finding,

and it issued a new commitment showing Elliott and the trustee of the testamentary trust as tenants in common, each with an undivided one-half interest in the property.

On April 1, 1982, the sale for $90,000 was consumated, the proceeds eventually to be distributed equally between Elliott and the trustee, each receiving $45,000.

On April 5, 1982, Elliott notified CTI of her loss of $45,000, the amount distributed to the trustee. On April 7, 1982, and May 7, 1982, Elliott demanded that CTI pay her for such loss, as provided in the title policy. On May 14, 1982, Elliott filed a two-count complaint against CTI, claiming a loss of $45,000 and CTI's engagement in improper claims practice thereby entitling her to reasonable attorney fees and other costs. CTI's amended answer denied Elliott's allegations and set forth affirmative defenses, specifically that: the 1958 deed to the construction company was actually a mortgage; the claim is barred from coverage under the policy's exclusionary clause; and Elliott sustained no actual losses.

Elliott's motion for summary judgment, supported by affidavits, sought the right to recover damages sustained because of her reliance upon the policy's erroneous description of title. CTI's countervailing memorandum, to which the affidavit of its office counsel was attached, claimed that there were issues of fact and law which precluded summary judgment. CTI's subsequent request for admission of genuineness of certain documents was admitted in the absence of objections. (87 Ill. 2d R. 216.) The documents and another affidavit of office counsel were filed by CTI as exhibits in opposition to Elliott's motion for summary judgment. Elliott answered CTI's additional brief, disclaiming the allegation that the deed to the construction company was a constructive mortgage and emphasizing her rightful reliance on the policy's joint tenancy language.

The circuit court found that: CTI's policy showing title in joint tenancy when the record indicated title was held in tenancy in common, was in error; the 1982 commitment describing Elliott and the trustee as tenants in common was an admission by CTI that the 1970 policy was a mistake; the tenancy in common created by the 1968 deed, drafted by Elliott's attorney, was not a defense affecting the nature of Elliott's cause of action; and the Elliotts had a right to rely on the joint tenancy characterization of title by the policy. Summary judgment was entered in Elliott's favor.

CTI then filed two motions: one, a motion to reconsider and vacate the order granting summary judgment in favor of Elliott, was denied; the other, which requested leave to file a third-party com-

plaint against Durable and the trustee as third-party defendants, was granted, and the complaint filed. Based on the concept of subrogation, CTI's complaint asked that: (1) Durable's deed to the Elliotts as tenants in common be reformed to reflect ownership in joint tenancy; (2) title to that part of Lot 1 which was formerly Lot 82, be quieted in Elliott as surviving joint tenant; (3) title to Lot 1 be quieted and found to be in Elliott as a surviving joint tenant; and (4) the trustee's receipt of one-half the sale proceeds which properly belong to Elliott was a mistake of fact and is due her or CTI if it is required to pay Elliott for such loss, as subrogee under its policy. The trustee's motions to strike and dismiss the third-party complaint or to enter judgment against CTI in counts I and III of the third-party complaint and to strike and dismiss counts II and IV as substantially insufficient at law, have not been ruled on.

Elliott's petition for attorney fees and damages, because CTI's allegation that Durable's deed was a release of a mortgage was unreasonable and vexatious, was denied.

CTI appeals from the summary judgment order. Elliott cross-appeals from the denial of her petition for attorney fees and damages.

On appeal, the parties are in dispute as to the actual amount of Elliott's losses, the propriety of relying upon the insurance policy's description of title, the designation of Durable's transfer of title as a deed rather than a release of a constructive mortgage and whether Elliott and her husband's alleged intent to hold title as tenants in common, which became the ultimate result, is relevant in light of the policy's description of title as held in joint tenancy, which questions themselves indicate material issues of fact exist. Underlying all these issues is the question of title to Lot 1, which must be resolved before Elliott's claim under the policy may be adjudicated.

■ Under the insurance policy, CTI has a right to establish title, which right must be considered together with Elliott's right to file a claim. Paragraph 7(a) of the insurance policy ("Conditions and Stipulations") states:

> "No claim shall arise or be maintainable under this policy (a) if *** [CTI], after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or establishes the title, as insured, within a reasonable time after receipt of such notice; ***."

CTI thereby possesses the right to clear title before an action under the policy may be brought. The transfers of title involved in this case support CTI's insistence upon its contractual right to clear title. Once

title has been established, Elliott's claim under the policy can be resolved.

■ In the still pending third-party action, CTI seeks to establish title to Lot 1. Durable and the trustee were properly made defendants as necessary parties for the complete determination or settlement of the question involved. (Ill. Rev. Stat. 1981, ch. 110, par. 2—405(a).) A necessary party is one whose presence is required: (1) to protect an interest in the subject matter of the controversy which would be materially affected by a judgment entered in his or her absence; (2) to reach a decision which will protect the interests of those before the court; or, (3) to enable the court to make a complete determination of the controversy. (*Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill. App. 3d 264, 398 N.E.2d 278.) Durable and the trustee are necessary parties here because without their presence, title cannot be cleared and without this issue being resolved, a complete determination of Elliott's claim for losses under the insurance policy cannot be made. The fact that the third-party claim was filed after summary judgment was entered does not bar adjudication of the claim since the summary judgment was not satisfied and, by allowing the claim to be filed, the circuit court effectively stayed enforcement of said judgment.

The circuit court should have directed that Elliott be included also in the third-party complaint since any decision regarding Lot 1 would necessarily affect her interest in said lot under section 2—406(a) (Ill. Rev. Stat. 1981, ch. 110, par. 2—406(a)). Further, including Elliott in the third-party action is contemplated by the insurance policy itself. Paragraph 3(e) ("Conditions and Stipulations") provides that an insured shall give the company all reasonable aid in prosecuting or defending any action required or permitted by the policy, in this instance, the third-party action.

■ Summary judgment, although a salutary procedure in the administration of justice, should be granted with caution so that the right to trial of conflicting facts and inferences is not usurped; only when the pleadings, depositions and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law, should a case be so decided. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005; *Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 793-94, 392 N.E.2d 1352, *aff'd* (1981), 85 Ill. 2d 161.) The moving party must show that his right to summary judgment is free from doubt. (*Bultman v. Bishop* (1983), 120 Ill. App. 3d 138, 457 N.E.2d 994.) Where the entire record reveals a genuine

issue of material fact, the motion for summary judgment should be denied. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) Under the circumstances of this case, the order granting summary judgment was premature and must be reversed and vacated.

Nevertheless, Elliott's claim should be preserved pending the outcome of the third-party complaint. Nothing in our decision should be construed as having determined any factual issue raised in the third-party complaint. Upon remandment, the circuit court must resolve the issue of title to Lot 1, followed by a determination of Elliott's claim under the policy, including whether or not the exclusionary provision of section 3(a) of the title policy should be applied. In light of the existence of factual issues involving title to Lot 1, the denial of Eliott's cross-appeal for attorney fees must be affirmed, since CTI's allegation and defenses at this stage of the litigation appear neither vexatious nor unreasonable.

In view of our decision, other issues on appeal need not be and are not reached.

Accordingly, the circuit court's order granting summary judgment is reversed and vacated and the cause remanded for a determination of the issues raised in the third-party complaint, as modified to include Elliott as a party and to preserve her claim under the policy. The circuit court's denial of Elliott's request for attorney fees is affirmed.

Affirmed in part, reversed and vacated in part, and remanded with directions.

DOWNING and PERLIN, JJ., concur.