VERNON KRAMER, Plaintiff-Appellant, v. WEEDHOPPER OF UTAH, INC., Defendant (Lawrence Engineering, Inc., Defendant-Appellee).

First District (2nd Division)   No. 84—2656

Opinion filed February 25, 1986.

STAMOS, J., dissenting.

Patrick J. Kenneally, Ltd., of Chicago (Peter R. Coladarci, of counsel), for appellant.

George W. Gessler, Mary S. Dym, and Philip L. Comella, all of Gessler, Wexler, Flynn, Laswell & Fleischmann, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff's amended, five-count complaint alleged strict product liability, negligence and breach of warranty against Weedhopper of Utah, Inc. (Weedhopper), and strict product liability against Lawrence Engineering, Inc. (Lawrence), and Hughes Aircraft Company, in seeking recovery for injuries he sustained in the crash of a Weedhopper ultralight aircraft which he had purchased and assembled. Weedhopper answered and filed affirmative defenses, to which plaintiff responded. Lawrence also answered. Thereafter, both Weedhopper and Lawrence filed motions for summary judgment. Subsequently, Weedhopper filed a petition in bankruptcy, and the action against it has been stayed. Hughes Aircraft Company was not involved in the incident complained of, was erroneously joined as a defendant and was voluntarily dismissed by the circuit court. Plaintiff answered Lawrence's motion for summary judgment. After a hearing, the summary judgment motion was allowed, from which plaintiff appeals.

We are asked to decide whether summary judgment was properly granted where plaintiff presented circumstantial evidence rather than direct proof of Lawrence's involvement in supplying a defective aircraft bolt to Weedhopper, which plaintiff claims was supplied to him in the kit purchased from Weedhopper, and which is alleged to have been a proximate cause of the accident and plaintiff's injuries. For the reasons set forth below, we reverse and remand for trial.

Prior to filing for bankruptcy, Weedhopper was in the business of selling unassembled ultralight aircraft. Typically, when an order was placed with Weedhopper, its employee would gather the necessary parts into a kit which would then be sent to the customer. On August 13, 1979, plaintiff ordered a kit from Weedhopper. He received the kit on November 26, 1979, and completed assembly of the aircraft on June 6, 1980. Included in plaintiff's kit, as with all Weedhopper kits, were various aircraft quality bolts, including one designated "AN4-33." The bolts were manufactured by California Screw, Inc. (Califor-

nia), and distributed by Lawrence and by Hughes Aviation. California marks the heads to its bolts, but Hughes Aviation and Lawrence do not further distinguish the bolts that they distribute. Weedhopper received bolts from both Lawrence and Hughes Aviation and organized the bolts according to size, irrespective of supplier.

Between the assembly date, June 6, 1980, and the crash date, July 8, 1980, plaintiff flew his aircraft several times for a total flying time of approximately eight hours. He alleged that on July 8, 1980, an AN4-33 bolt sheared off, causing the aircraft to crash. Although the bolt's head was never recovered, plaintiff's expert, a metallurgist, examined the shaft of the bolt and concluded that its surface pitting and high concentration of hydrogen made it unsuitable for aircraft use. As a result of the crash, plaintiff suffered a concussion and fractured vertabrae, among other injuries, and was unable to work for about six months.

On December 30, 1980, this action against Weedhopper was filed sounding in strict product liability and negligence. Following receipt of answers to interrogatories, plaintiff amended his complaint adding a breach of warranty count against Weedhopper and adding Lawrence and Hughes Aircraft as defendants to strict product liability counts. The manufacturer, California Screw, was not joined as a defendant, plaintiff asserting he was not aware of its identity or even of its existence until after the limitations period had run. Weedhopper subsequently filed for bankruptcy and proceedings against it were stayed. Hughes Aircraft was misidentified; the intended defendant was Hughes Aviation. Following the voluntary dismissal of Hughes Aircraft, Hughes Aviation could not be joined due to the running of the limitations period. Plaintiff then proceeded only against Lawrence.

Lawrence's motion for summary judgment asserted that plaintiff had failed to establish any link between it and the allegedly defective bolt. Susan Boman, president of Weedhopper, stated in an affidavit that there was no way she could positively determine from Weedhopper's records or from the AN4-33 bolt itself who actually supplied the bolt that was shipped to plaintiff, a position also taken in her deposition, in which she stated that Hughes Aviation supplied bolts to Weedhopper in 1977 and 1978 when Weedhopper was first starting up, because, at that time, Hughes could supply the bolts necessary for the limited number of kits ordered and because Hughes was nearby. Boman's deposition, excerpts of which were filed by plaintiff in opposition to Lawrence's motion, revealed these further asserted facts: As orders increased, Weedhopper switched to Lawrence. During 1979 Weedhopper procured approximately 90% of its AN4-33 bolts from

Lawrence, according to Boman. Hughes Aviation was then used only when bolts were needed immediately. Hughes Aviation was never a major wholesale supplier of aircraft parts, but was a small operation supplying parts at a private airport and apparently did not even publish a parts catalog. Hughes Aviation was used by Weedhopper because it was close by, allowing Weedhopper employees to pick up an occasional part as necessary. Hughes Aviation could not satisfy Weedhopper's regular day-to-day demand by 1979; regular orders went to Lawrence. When plaintiff received his kit in November 1979, Weedhopper's use of Hughes Aviation was limited to supplying its "proto-type department" and occasional individual backorders for insistent customers. Lawrence was Weedhopper's "primary supplier" indicating that during 1979, the AN4-33 bolts in Weedhopper's bin were probably supplied by Lawrence. Originally, plaintiff's particular kit was missing bolts which were on backorder.

The ratio of AN4-33 bolts supplied to Weedhopper by Lawrence and by Hughes Aviation provided the basis for Lawrence's motion for summary judgment. When asked what proportion of Weedhopper's AN4-33 bolts were purchased from Lawrence and what proportion from Hughes Aviation, Boman replied: "I would probably put it at 90 to 10; 90 to Lawrence; 10 to Hughes [Aviation]." Plaintiff opposed Lawrence's motion for summary judgment by arguing to the circuit court that the nine to one probability established a factual basis for a jury to permissibly infer circumstantially that Lawrence supplied the allegedly defective bolt. The circuit court, however, granted Lawrence's motion, stating that nine to one odds could not provide the basis for a reasonable inference sufficient to present a jury question.

■ Summary judgment, although a salutary procedure in the administration of justice, must be granted with caution so that no party's right to trial is usurped in the presence of conflicting facts and inferences or when reasonable persons might fairly reach differing results. (*Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 404, 472 N.E.2d 822; *Elliott v. Chicago Title Insurance Co.* (1984), 123 Ill. App. 3d 226, 231, 462 N.E.2d 640.) Summary judgment should be granted only when the pleadings and other evidence demonstrate that there is no triable issue of material fact and that the movant is therefore entitled to judgment as a matter of law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005; *Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 472 N.E.2d 822; *Elliott v. Chicago Title Insurance Co.* (1984), 123 Ill. App. 3d 226, 462 N.E.2d 640.) The circuit court must determine whether a triable issue exists from the affidavits,

depositions, admissions, exhibits and pleadings in the case. (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.) The respondent need not prove his case at the summary judgment stage, but he may be required to present some evidence which demonstrates the existence of a triable and genuine issue of fact. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1059, 473 N.E.2d 444.) Inferences which may be reasonably drawn from the evidence are resolved in favor of the nonmovant. (*Rubin v. City National Bank & Trust Co.* (1980), 81 Ill. App. 3d 1020, 1022, 402 N.E.2d 281.) Where the evidence raises no issue of material fact, however, summary judgment is properly granted. *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1056, 473 N.E.2d 444.

■ To recover under strict liability in tort, plaintiff must prove that: (1) injury resulted from the condition of the product; (2) the condition was unreasonably dangerous; and (3) the condition existed when the product left defendant's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 621-22, 210 N.E.2d 182; *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 342-44, 247 N.E.2d 401.) Further, it is necessary that defendant be in the business of placing the product in the stream of commerce. (*Siemen v. Alden* (1975), 34 Ill. App. 3d 961, 963, 341 N.E.2d 713.) It is apparent that liability rests upon defendant's participation in the circumstances. (*Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill. App. 3d 480, 482, 364 N.E.2d 502.) In Illinois, a plaintiff must identify the supplier of the product and establish a causal relationship between the injury and the product. (*Schmidt v. Archer Iron Works, Inc.* (1970), 44 Ill. 2d 401, 402-03, 256 N.E.2d 6, *cert. denied* (1970), 398 U.S. 959, 26 L. Ed. 2d 544, 90 S. Ct. 2173.) Thus, in product liability cases, the supplier's link to the product in question must be shown. *Schmidt v. Archer Iron Works, Inc.* (1970), 44 Ill. 2d 401, 405-06.

■ The parties here do not seriously dispute that the elements of a product liability action may be proved inferentially or by direct or circumstantial evidence. The dispute centers, instead, on whether the fact that Lawrence supplied 90% of the bolts used by Weedhopper is sufficient circumstantial evidence to avoid entry of summary judgment. Circumstantial evidence consists of facts or circumstances which give rise to a reasonable inference of the truth of an underlying fact. (Illinois Pattern Jury Instruction, Civil, No. 1.03 (2d ed. 1971).) Such evidence must have reasonable probative force; the jury will not be allowed to engage in conjecture, surmise or speculation. *Rockett v. Chevrolet Motor Division, General Motors Corp.* (1975), 31 Ill. App. 3d 217, 221, 334 N.E.2d 764.

■ The focus must then be on what quantum of evidence is sufficient for an inference to be reasonable. This measure has eluded specific standardization and enumeration. (*Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 33, 468 N.E.2d 422.) Generally, the test of reasonableness resolves itself into a question of probability: is the inferred occurrence more probable than not, or is it merely possible. *Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 33-34, quoting James, *Sufficiency of the Evidence and Jury-Control Devices Available Before Verdict*, 47 Va. L. Rev. 218, 221-22 (1961).

■ In the instant action there is evidence that: (1) Lawrence supplied 90% of Weedhopper's AN4-33 bolts in 1979; (2) Lawrence was used by Weedhopper to supply bolts to meet general demand; and (3) Hughes Aviation was used to supply bolts only as specially necessary. This evidence, while circumstantial, permits the inference that the bolts in Weedhopper's bin and the bolt supplied to Kramer were purchased from Lawrence. Hughes Aviation was merely a "possible" source of the bolt and plaintiff need not, at least at summary judgment stage, disprove that possibility. Evidence showing that defendant was the exclusive distributor of a product would strongly support plaintiff's case when defendant's identification can be proved only circumstantially; but when two suppliers of an allegedly dangerous product exist, under circumstances which show that a defendant supplied 90% of the parts used, this evidence is sufficient to withstand a motion for summary judgment.

The standard of proof in civil litigation is neither absolute nor beyond a reasonable doubt; here, a preponderance of the evidence will suffice. Defendant was allegedly the most probable cause of plaintiff's injury. The defects in plaintiff's proof are such that affect the weight which should be accorded the evidence, not whether the evidence initially poses a genuine material triable question of fact. To hold otherwise would require the granting of summary judgment whenever a defendant raises the mere possibility of misidentification. A situation such as this, dealing with wholesale suppliers of fungible goods, may not allow for the direct identification of who supplied an allegedly defective part. Plaintiff, in the present posture of the instant action, has presented sufficient evidence to establish a strong inference that Lawrence supplied the allegedly defective bolt and he is entitled to develop his case at trial. Summary judgment, therefore, must be reversed and the cause remanded for trial.

Reversed and remanded.

BILANDIC, P.J., concurs.

JUSTICE STAMOS, dissenting:

I respectfully dissent from the opinion of the court.

As noted by the majority, this case is here on appeal from the circuit court's granting of summary judgment. Summary judgment should be granted where there are no genuine issues of material fact and where the pleadings, depositions and other evidence before the court in the motion for summary judgment show that at trial a verdict would have to be directed. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; *Pedersen v. Joliet Park District* (1985), 136 Ill. App. 3d 172, 175, 483 N.E.2d 21.) In Illinois, no strict liability in tort will lie unless a plaintiff identifies the supplier of the product and establishes a causal relationship between the injury and the product. (*Schmidt v. Archer Iron Works, Inc.* (1970), 44 Ill. 2d 401, 402-03, 256 N.E.2d 6, *cert. denied* (1970), 398 U.S. 959, 26 L. Ed. 2d 544, 90 S. Ct. 2173.) If a plaintiff fails to establish this element of proximate cause, he has not sustained his burden of making a *prima facie* case. Here, the plaintiff has admitted both that he does not know who supplied the allegedly defective bolt contained in the ultra-light aircraft kit he purchased, and that he cannot present at trial any evidence as to this question other than Susan Boman's deposition testimony that "probably" 90% of Weedhopper's AN4-33 bolts were purchased from Lawrence Engineering and 10% of these bolts were purchased from Hughes Aviation. I would hold that this is insufficient evidence to prove plaintiff's case, and that a directed verdict for defendant would be required at trial. Accordingly, the trial court properly granted the defendant's motion for summary judgment.

Liability is not based on a balancing of probabilities, but on a finding of fact. While the majority contends that the measure of what is considered sufficient evidence to draw a reasonable inference resolves itself into a question of probability, a review of case law involving nonidentifiable defendant suppliers or manufacturers reveals that a theoretical probability alone cannot be the basis for a reasonable inference. There must be some evidence in addition to the abstraction which will enable a jury to choose between the competing probabilities.

In *Neubauer v. Coca Cola Bottling Co.* (1968), 96 Ill. App. 2d 18, 238 N.E.2d 437, we held that evidence that defendant was the exclusive distributor in the relevant geographic area, along with other evidence, was sufficient to show that the cola in question was sold by the

defendant. *Neubauer* distinguished *Welch v. Coca-Cola Bottlers' Association* (Tex. Civ. App. 1964), 380 S.W.2d 26, in which the court held that plaintiff had not conclusively identified the defendant as the distributor of the cola in question. The *Welch* court said that since no evidence was presented that defendant was the only concern distributing bottled Coca-Cola in that area, the evidence presented was only a surmise against defendant which properly had been withheld from the jury. Here, where plaintiff concedes that there existed two suppliers of the product in question, the bare nine to one probability is insufficient to justify an inference that Lawrence supplied the bolt in plaintiff's aircraft kit.

Other jurisdictions dealing with the issue of a nonidentifiable defendant have also demanded an evidentiary basis beyond a mere statistical probability. In *Garcia v. Joseph Vince Co.* (1978), 84 Cal. App. 3d 868, 148 Cal. Rptr. 843, the plaintiff was injured when an opponent's sabre broke through his fencing mask during competition. He sued the alleged manufacturer of the sabre and the manufacturer-supplier of the mask in strict products liability. Plaintiff's opponent and the school had purchased blades from both defendants. The blade was inspected following the accident, but it became mixed with other blades and was not produced at trial. When judgment of nonsuit was granted in favor of both defendants, plaintiff appealed.

The appellate court found that plaintiff's evidence was insufficient to permit a jury to determine the liability of either defendant. It affirmed, holding that the jury would only have had a chain of conjecture without contradictory or conflicting evidence to be resolved in the case.

In *Wetzel v. Eaton Corp.* (D. Minn. 1973), 62 F.R.D. 22, the plaintiff was injured when a tractor he was riding overturned. He sued the manufacturer of the tractor and two suppliers of tractor parts, based on strict tort liability, claiming a part of the steering mechanism was defective. One supplier did not answer and was held in default. The part had been discarded or destroyed and was not available for inspection. Further, no business records or other documentation tied the remaining supplier to the manufacture or sale of the part and the manufacturer said only that it or the supplier "could have" supplied the part in question. The court granted the supplier's motion for summary judgment, finding no direct or circumstantial evidence giving rise to a reasonable inference that the supplier sold the part. As in *Garcia*, the court stated that liability could only have been predicated on impermissible conjecture or speculation.

*Wetzel* was cited with approval in *Mason v. Spiegel, Inc.* (D. Minn.

1985), 610 F. Supp. 401. There, plaintiff was burned when her woven tennis dress caught fire from a burning match. She sued Spiegel, Inc., as the seller of the dress, alleging strict liability in tort for selling an unreasonably flammable product. When Spiegel brought a third-party complaint against three alleged manufacturers of the dress, these third-party defendants each claimed that they were entitled to summary judgment against Spiegel because it could not identify which of the three manufacturers sold the tennis dress.

Although two of the third-party defendants had examined boxes of documents pertaining to sales to Spiegel and had found no evidence concerning the style or similar style of dress in question, one of the third-party defendants had no documents to prove that it did not manufacture the tennis dress for Spiegel. Nonetheless, the court held that as a matter of law, Spiegel had failed to support a sufficient cause of action against even that manufacturer. Analogizing to *Wetzel*, the court stated that Spiegel's evidence of testimony from former employees that the garment "would have been purchased" from one of the three manufacturers merely established facts giving rise to inconsistent inferences. Since one of three companies could have made the dress, liability could only be based on speculation, and the motions for summary judgment were granted.

The *Mason* court's conclusion that any finding of liability would be mere conjecture refused to differentiate the third-party defendant who could produce no evidence that it had not supplied the dress, from the two manufacturers whose evidence more probably demonstrated that they had not supplied the dress. This indicates that when a theoretical probability alone is alleged to be sufficient evidence to draw a reasonable inference, the mathematical quantum of the probability is irrelevant. The point is illustrated most clearly in *Guenther v. Armstrong Rubber Co.* (3d Cir. 1969), 406 F.2d 1315. There, a mechanic for Sears Roebuck & Company sued defendant for products liability negligence when a tire he was preparing to mount on a car burst. The district court had directed a verdict for defendant when the plaintiff testified that the tire which burst was a 15-inch blackwall tire, while the tire which defendant admitted making, which the employer's service manager stated caused the accident and which was in court, was a 13-inch whitewall tire. The circuit court of appeals specifically rejected plaintiff-appellant's argument that his claim should have been allowed to go to the jury because the evidence proved that defendant made 75% to 80% of the tires the particular Sears Roebuck store had for sale.

The circuit court noted that the district court, in holding that

plaintiff's evidence of identification failed, had relied on *Kamosky v. Owens-Illinois Glass Co.* (M.D. Pa. 1950), 89 F. Supp. 561, *affirmed* (3d Cir. 1950), 185 F.2d 674. In *Kamosky*, the district court directed a verdict for a defendant bottle manufacturer who was sued when plaintiff was injured by an exploding bottle. Plaintiff's evidence identifying defendant as the producer of the bottle was that defendant provided virtually all of the new bottles used by the particular brewery which filled bottles for the distributor who actually sold the exploding bottle to plaintiff. Of the bottles which the brewery filled, between 10% and 15% were new bottles. The *Kamosky* court held that this evidence was insufficient to find the defendant supplied the bottle involved in the accident.

The *Guenther* circuit court found that, notwithstanding the contrast between the 10% to 15% likelihood of liability in *Kamosky* and the 75% to 80% likelihood of liability in the case before it, the probability hypothesis could not support a jury verdict. Although the court reversed the judgment on other grounds, it found that there was no justification for allowing the mere probability of identification to go to the jury, since any verdict would "at best be a guess." *Guenther v. Armstrong Rubber Co.* (3d Cir. 1969), 406 F.2d 1315, 1318.

Thus, according to traditional concepts of causality, it is apparent that any holding that a defendant is liable for injury caused by a product must be predicated upon evidence greater than a naked theoretical probability that that defendant is in some way responsible for the product. Imposing liability only on the defendant whose wrongful acts actually caused the plaintiff's harm comports with some of our society's deepest beliefs in moral responsibility and just compensation. It is not enough to say that there are 51 chances of liability out of 100. Nor is it enough, or better, to say that there are 90 chances of liability out of 100.

The majority states that affirming summary judgment for defendant Lawrence in this case would "require the granting of summary judgment whenever a defendant raises the mere possibility of misidentification." (141 Ill. App. 3d at 222.) However, our focus must be on applying the law to the facts of this particular case. I believe that a theoretical probability alone cannot be the basis for a reasonable inference that a producer, manufacturer, seller, or any person in a similar situation, is liable for injury caused by a particular product. The facts in the record before us reflect that (1) the theoretical statistic of nine to one odds that defendant supplied the bolt in question is one deponent's approximation; (2) the other firm alleged to have supplied 10% of the bolts cannot be joined in the lawsuit; (3) no evidence

exists that defendant Lawrence was the exclusive supplier of AN4-33 bolts to Weedhopper during the relevant period; (4) no evidence exists that the particular bin from which Weedhopper employees assembled plaintiff's kit contained 90% Lawrence-supplied bolts, and (5) no records exist showing the percentage of Lawrence-supplied bolts contained in plaintiff's particular kit.

Indeed, if we are to indulge in generalizations, to hold otherwise subjects any supplier selling more than 50% of a certain product to potential liability for any blind accident. Individualized connection of the defendant to the alleged harm is necessary under the standards of products liability law. The establishment of the identity of the tortfeasor is not one of the onerous evidentiary burdens inherent in negligence actions that have been eliminated in strict products liability proceedings. (*McCreery v. Eli Lilly & Co.* (1978), 87 Cal. App. 3d 77, 150 Cal. Rptr. 730.) The rule in Illinois is that plaintiff must identify the supplier and establish the causal relation between the injury and the product. *Schmidt v. Archer Iron Works, Inc.* (1970), 44 Ill. 2d 401, 256 N.E.2d 6, *cert. denied* (1970), 398 U.S. 959, 26 L. Ed. 2d 544, 90 S. Ct. 2173.

I would affirm.