Anthony Perino and Marquette National Bank, as Trustee Under Trust No. 2400, Plaintiffs-Appellees, v. Protect-All-Shelters, Inc., an Illinois Corporation, Paul B. Stadtler, M. N. Vernon, and George M. Novak, Defendants, George M. Novak, Appellant.

Gen. No. 68–38.

Third District.

September 11, 1970.

Walter C. Wellman, of Lyons, for appellant.

Krusemark & Bertani, of Joliet, for appellee.

ALLOY, J.

Plaintiffs Anthony Perino and Marquette National Bank, as Trustee under a certain trust, initiated an action for specific performance as a seller under a contract for sale of real estate. The original contract was entered into between Perino, as seller, and Protect-All-Shelters,

Inc., an Illinois corporation, on June 6, 1963. Legal title to the land was in the name of Marquette National Bank as Trustee under a land trust for the sole benefit of Anthony Perino. The agreement covered 38.74 acres of land in Will County for an agreed sale price of $83,800. It was contemplated by the purchaser that it would subdivide the land into Spencer Highlands Subdivision Unit No. 2. Purchaser was to pay $1,000 on the $83,800 purchase price for each lot selected for the first 83 lots and $800 per lot for the balance selected. The purchaser was to select only lots fronting on Ricky Drive and, thereafter, on the street immediately east and parallel to Ricky Drive. The agreement also provided that the purchaser was to pay a total of $25,000 on or before December 1, 1963, $10,000 on or before January 15, 1964, and $15,000 on or before April 15, 1964, and the entire balance on or before December 31, 1965. In addition to other standard provisions, in Paragraph VI it was specifically provided that in the event the purchaser shall not pay $25,000 of the purchase price on or before December 1, 1963, or in the event the entire purchase price shall not have been paid on or before December 31, 1965, then upon twenty (20) days' prior notice to the purchaser advising it of its default or defaults hereunder, and providing further that the same are not cured within said period of time, the agreement and all rights and interest of the purchaser therein would be forfeited and terminated and any and all moneys paid by the purchaser shall be forfeited and retained by the seller in full satisfaction and liquidation of all damages sustained by the seller. It was further provided that all titles to real estate previously obtained by the purchaser would be retained by it, its nominee or designee and the parties thereafter would be "fully and completely relieved of any and all obligations" under the terms of the contract. The original contract was signed by Anthony Perino as sole bene-

ficiary under the land trust as seller and Protect-All-Shelters, Inc., by Paul Stadtler as president and attested by M. N. Vernon as secretary. Marquette National Bank also signed agreeing to be bound by the terms of the contract.

On the trial of the cause it was shown that Protect-All-Shelters, Inc. was not able to obtain approval of the subdivision plat of the property being purchased and as a result, the corporation was in serious financial difficulty, which finally resulted in the corporation being involuntarily dissolved. It was clear at this time that defendant-purchaser would not be able to pay the required $25,000 due by December 1, 1963. As a result, Mr. Perino, Mr. Vernon and Mr. Stadtler met at Marquette Bank on December 6, 1963, to work out an amendment of the June 6, 1963, agreement. The amendment provided that it was an amendment to the original agreement. The amendment recited, in lieu of the $25,000 due on or before December 1, 1963, that $10,000 was to be paid on or before January 15, 1964, and $15,000 on or before April 15, 1964. There was also a change in the area where lots could be selected which permitted the buyers a larger selection. The forfeiture provision in Item VI was amended to show the change from $25,000 due on or before December 1, 1963, to the payments due in January and April, 1964, referred to. The amendment was signed by Perino as seller and by Paul B. Stadtler as president and M. N. Vernon as secretary respectively of Protect-All-Shelters, Inc., a corporation. The amendment was also signed by Paul B. Stadtler, M. N. Vernon and George M. Novak over signature lines noted below with the designation "individually."

There was evidence at the trial of the action that Perino would not agree to the extension unless Stadtler, Vernon and Novak agreed to be personally responsible under the agreement. The names of Stadtler, Vernon

479

and Novak which were signed to the amendment do not appear in the body of the amendment.

On January 16, 1964, M. N. Vernon, Inc., gave the trustee Marquette Bank a check for $5,000 as payment for conveyance of five lots. The trustee cashed the check and Mr. Vernon took the deed to the lots. He kept this deed until June 1964 but did not record it. In June 1964, he returned the deed to the five lots to the trustee and it is still held by the trustee and has never been recorded. There was evidence that this deed was given to Vernon to be used for the purpose of negotiating for purchase of a six-inch strip of ground which was needed to allow lots to be laid out in the proposed subdivision.

On April 27, 1964, the trust officer of Marquette National Bank wrote Protect-All-Shelters, Inc. c/o Novak and Novak in Chicago, a letter as follows:

"MARQUETTE NATIONAL BANK
"63rd and Western Avenue Chicago 36 Illinois

"GRovehill 6–5100

"April 27, 1964

"Protect-All-Shelters, Inc.,
"c/o Novak and Novak, Attorney at Law,
"77 West Washington Street,
"Chicago, Illinois

"Re: Our Land Trust #2400
 "Protect-All-Shelters, Inc.—
 "purchaser,
 "Anthony Perino—seller

"Gentlemen:

"Pursuant to the terms of Agreement dated June 6, 1963, as amended December 6, 1963, between the above parties, there was due to be paid on or before April 15, 1964, by the purchaser, the additional sum of $15,000.

480

"Since this sum was not paid, as provided, we hereby serve you notice of default and in accordance with provision VI of said Agreement, we hereby further notify you that unless said default is cured by depositing with us said sum of $15,000 on or before May 18, 1964, said Agreement shall be forfeited including the rights and interests of the purchaser thereunder.

"MARQUETTE NATIONAL BANK,
as Trustee under Trust #2400,

"By: /S/ ROBERT J. WESLEY
Trust Officer

cc: Anthony Perino"

Perino, when shown a copy of the letter, stated that the first time he saw it was in court, but he admitted that a carbon copy might have come to him. The trust officer who signed the April 27, 1964 letter, testified that he had talked to Perino either the day before or the same day the letter was sent out. He also stated that Mr. Perino told him he hoped to find some other party to purchase the land. The trust officer contacted an attorney who said the forfeiture notice would be required to comply with the provisions of the agreement to terminate the agreement. There was testimony that Mr. Perino was called and that the letter was sent out pursuant to Mr. Perino's instruction.

The evidence presented at the trial disclosed that after the original contract was entered into there was a change in the rules of Will County Health Department with the result that only 90 lots could be laid out on the tract involved instead of the 130 lots originally planned. Perino had nothing to do with the change in the rules or the number of lots which thereafter could be built because of percolation tests on the tract.

481

During the trial of the specific performance action there was evidence presented with respect to a six-inch strip of ground (which strip was located between the tract being sold and Ricky Drive). At the time the contract was entered into this six-inch strip of ground was owned by a Mr. McTee. The evidence showed that Perino had sold the property to McTee in 1961 and that McTee had subdivided it into Spencer Highlands Subdivision No. 1. McTee purchased 341 feet from Perino and McTee's Spencer Highlands Subdivision No. 1 was laid out using 340.5 feet, with the remaining six inches being on the east side of Ricky Drive so that there could be no access from the property which is the subject of the instant specific performance action directly onto Ricky Drive unless an easement was obtained over the six-inch strip. There was some dispute as to whether the existence of this six-inch strip was known by Novak, Stadtler and Vernon prior to the time they signed the amendment to the agreement in December 1963. There was evidence to show that the individual defendants had tried to obtain title to the strip from McTee, and, in fact, paid $5,000 for the five lots in order to use the lots to bargain with McTee for the strip.

In the complaint by Perino and Marquette Bank, action was instituted against the Protect-All-Shelters, Inc., a corporation, and the three individuals who had signed the amendment. At the close of the case the court decreed specific performance and directed that the defendants pay the balance due on the contract of $73,800 within ten days, on receipt of a deed to such land. The decree further provided that on failure to pay such amount, a judgment be entered against all defendants for $73,800.

Issues involved in this case were (1) whether the letter of April 27, 1964, amounted to a forfeiture of the contract and thus prevented plaintiff from seeking specific performance of the contract, (2) whether the individual defendants Stadtler, Vernon and Novak became

obligated personally by affixing their signatures to the December 6, 1963, amendment to the original agreement between Perino and Protect-All-Shelters, Inc., a corporation, (3) whether the plaintiff Perino was guilty of fraud in securing the execution of the June 6, 1963, agreement, (4) whether the contract was cancelled by a verbal agreement between Mr. Perino and defendant Vernon when the $5,000 was paid and the deed to the five lots was thereafter returned, (5) whether the finding of the trial judge was contrary to the manifest weight of the evidence, and (6) whether the trial judge was correct in ordering specific performance and a judgment for $73,800.

A fundamental issue for determination is whether the letter of April 27, 1964, effected a forfeiture of the contract. If such forfeiture was actually made, plaintiff could not maintain the action for specific performance, and the remaining issues need not be determined.

It is noted that the letter of April 27, 1964, specifically recited that it was served pursuant to Article VI of the contract. It provided that unless the default was cured by depositing with the bank the sum of $15,000 on or before May 18, 1964, the agreement would be forfeited (including the rights and interest of the purchaser thereunder). It is clear that a vendor under a contract could not forfeit the contract and also seek specific performance. As noted in Solomon Iron & Metal Co. v. Bradford, 33 Ill App2d 452, at 455, 179 NE2d 697:

> "It is apparent that a vendor cannot at the same time forfeit or rescind a contract and also insist upon payment of the purchase price (Wollenberger v. Hoover, 346 Ill 511, 544, 179 NE 42). It is pointed out that the remedy based on the theory of affirmance of a contract is inconsistent with the remedy arising out of the same facts based on a contrary theory of disaffirmance or rescission. Obviously, if

> a vendor cancels the contract he cannot inconsistent-
> ly continue the liability of a purchaser for the pur-
> chase money."

Supporting the same principle are Jones v. Dove, 382 Ill
445, 47 NE2d 447 and Hayne v. Fenton, 321 Ill 442,
151 NE 887.

While the plaintiff Perino denies any knowledge of the
letter and also denies directing that it be sent, the rep-
resentative of the bank who signed the letter testified
that he conferred with Perino before and after sending
the letter and, in fact, consulted an attorney for Perino
before wording the letter to be sure that he was comply-
ing with the terms of the contract. He also testified that
Perino told him that he (Perino) hoped to find some
other party to purchase the property.

It is contended by Perino that the return of the deed
to the five lots which had been given to Vernon on Janu-
ary 16, 1964 (prior to the forfeiture notice) supports the
contention that there was no forfeiture of the agreement.
Vernon had testified that he paid $5,000 for the deed to
the five lots and attempted to exchange the five lots for
the six-inch strip so as to make it possible to go ahead
with the subdivision. That deal fell through. He re-
turned the deed to Perino on June 15, 1964, for the stated
purpose of eliminating any further obligation under the
contract. On appeal in this Court, Vernon contends that
he is entitled to a refund of the $5,000 which he paid
for the deed to the five lots prior to the forfeiture notice.

■ Whether the individual defendants are consid-
ered to be principals or guarantors, all of the parties to
the agreement and the amendment to the agreement had
entered into an arrangement in which the corporation,
Protect-All-Shelters, Inc., was still named and carried as
the nominal principal and the nominal purchaser. The
notice of forfeiture was given to such principal, and there
was no contention by the individuals that such notice

was inadequate. On the contrary, defendants contend that the forfeiture notice effectively terminated the agreement. On the basis of our review of the record, we must agree with such contention. Nor do we believe that the record sustains the contention of plaintiff that the notice of forfeiture could be construed as an effort by plaintiffs simply to eliminate the interest of Protect-All-Shelters, Inc. while still retaining the three individual defendants as responsible parties on the contract. The forfeiture notice contained no specification or language which would justify construction. The notice expressed a clear and unequivocal intention to forfeit the contract.

In view of the evidence in the record, however, we do not believe that Vernon is entitled to a return of the $5,000 payment made for the five lots. His testimony was to the effect that the deed was returned for the purpose of eliminating any obligation under the terms of the contract and not, as Perino contends, to procure an extension of time to perform under the contract. We do not believe that the record sustains Perino's contention.

For the reasons stated, therefore, the judgment of the Circuit Court of Will County will be reversed and this cause is remanded to such court with directions to vacate the decree and the judgment entered in this cause, and to enter judgment in favor of defendants in this cause in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

RYAN, P. J. and STOUDER, J., concur.