KENNETH R. HOOVER, Plaintiff-Appellee, v. KENT R. CRIPPEN *et al.*, Defendants-Appellants.

Third District   No. 3—87—0063

Opinion filed November 13, 1987.—Rehearing denied January 6, 1988.

Churchill & Churchill, of Moline (Daniel Churchill, of counsel), for appellants.

John P. Harris, of Bozeman, Neighbour, Patton & Noe, of Moline (Robert J. Noe, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

In 1982, Kenneth Hoover, the plaintiff, and Crippen, Reid and Bowen, the defendants, established a partnership for the practice of accounting. The firm name was Crippen and Hoover. Paragraph 11 of the partnership agreement provided in part:

> "Each partner shall be entitled to an allocation of his proportionate share of the profits in excess of any profits specially allocated (referred to herein as base salaries, but not in a taxation sense) to Partners of the Partnership as his interest in the capital in the Partnership bears to the total capital ***."

The partnership also entered into a cross-purchase agreement pertaining to the partners' respective rights and liabilities in the event of disability, death, withdrawal, retirement or dissolution. The cross-purchase agreement provided that a partner had the right to retire at age 60, but the plaintiff began contemplating retirement at an earlier age if two matters could be worked out: (1) development of a retirement or pension payment and (2) sale of his 50% interest in the building occupied by the partnership or rental of the premises on a commercially acceptable basis.

While these two things were supposedly being worked out, the partners entered into an addendum to the partnership agreement effective October 1, 1983, the beginning of the partnership's fiscal year. It reflected their agreement that Hoover would no longer be obligated to spend full time in the practice, and provided that the plaintiff would receive an agreed hourly rate of $25 an hour for 1,000 to 1,100 hours of guaranteed work for October 1, 1983, through September 30, 1984. A second written addendum was executed for the period of October 1, 1984, through September 30, 1985. It provided that the plaintiff would receive $26 an hour for 1,100 hours of work. A third addendum was executed for October 1, 1985, through September 30, 1986. It guaranteed the plaintiff 400 hours of work for October through April 15, 1986, at $28 per hour. The final addendum further provided that no work was to be performed by the plaintiff subsequent to April

15, 1986, except on a requested basis, and that all parties contemplated the retirement of the plaintiff effective September 30, 1986.

All three addenda continued to refer to the plaintiff as a partner, and stated that the lesser number of hours to be worked by him were not to be construed as incapacity or retirement, but as unpaid vacation. The three addenda further provided:

"If partners Crippen, Reid, and Bowen, or [the plaintiff], decide that the above detailed arrangement is not properly working, or is not in the best interests of the Partnership, the parties agree to compensate [the plaintiff] his hours to date and revert to the original Partnership Agreement and Partners Cross Purchase Agreement for remedies."

In June of 1986, the defendants notified the plaintiff that an agreement had been prepared for his signature which indicated that he had withdrawn from the partnership on April 30, 1986. When the plaintiff learned that the document contained no provision for a retirement or pension payment and no provision for the sale of his 50% interest in the partnership building, or rental of the premises on a commercially acceptable basis, he refused to sign the withdrawal agreement. The remaining partners then sent the plaintiff a letter, dated June 27, 1986, indicating that his status as partner had been terminated as of April 30, 1986. They also tendered a check for the balance of his capital account.

Deciding that the addenda agreements were not working properly, the plaintiff notified the partnership, via letter dated July 14, 1986, that he was electing to revert to the original partnership agreement and cross-purchase agreement and that he would be resuming full-time duties. Before he could resume such duties, however, the defendants elected to withdraw from the partnership effective July 31, 1986. The withdrawal of a majority of the partners automatically dissolved the partnership, according to the partnership agreement, and thereby required liquidation.

When the plaintiff and the defendants could not agree to a division of the partnership assets, the plaintiff filed this action for liquidation. In his prayer for relief, the plaintiff asked the court to supervise the division of the assets of the partnership, to order an accounting of the partnership for its last 10 months in operation, and to distribute the assets of the partnership to the partners in their fair share. There were initial proceedings whereby the plaintiff obtained an injunction prohibiting the defendants from taking certain actions. This court affirmed the granting of the injunctions. (*Hoover v. Crippen* (1987), 151 Ill. App. 3d 864.) During trial, the court heard and received evidence

concerning the agreements entered into by the parties and evidence concerning the proper liquidation of a partnership. Following trial, the court found that the defendants' letter of June 27, 1986, wherein the defendants stated that the plaintiff's status as partner was terminated, and the plaintiff's letter of July 14, 1986, whereby he reverted to the original partnership agreements, effectively reinstated all provisions of the partnership agreement and cross-purchase agreement for the fiscal year beginning October 1, 1985, and ending with dissolution on July 31, 1986. Based on this finding, the court further found that the plaintiff was entitled to share in the profits generated during that time period, and that the plaintiff's share of the partnership assets was $54,842.56. After assessing a 3% bad debt factor and assessing the plaintiff with his share of liquidation expenses, the court entered judgment in the plaintiff's favor for $53,503.45 plus costs. This appeal follows.

The defendants dispute that the plaintiff is entitled to share in profits generated prior to the date that reversion to the original agreements took place. In support of this argument, they state that "during the term of the addendum agreements, plaintiff was not legally a partner of the partnership, and therefore, totally unauthorized by the original agreements to share in partnership profits." We disagree.

■ The requisites of a partnership are that the parties joined together to carry on a trade or venture for their common benefit, each contributing property or services, and having a community of interest in the profits. As between the parties, the existence of a partnership relation is a question of intention to be gathered from all the facts and circumstances. Factors to consider are profit sharing, written articles of agreement, the mode in which the parties have dealt with each other and others, and the use of the firm name. *Rizzo v. Rizzo* (1954), 3 Ill. 2d 291.

■ As the original partnership agreement establishes, the plaintiff and the defendants joined together to pursue the practice of accounting for their common benefit. Each contributed capital and services, and all had a community of interest in the profits. Though during the addenda period the plaintiff was paid an hourly rate for a guaranteed number of hours, and did not share in additional profits generated by the firm, he retained the right to revert to the original partnership agreement, wherein he was entitled to share in additional profits. Further, the addenda continued to refer to the plaintiff as a partner and stated, "The Crippen and Hoover Partnership Agreement dated October 1, 1982 will continue and the partners will operate the

firm approximately as before." Finally, the accounting firm used the Hoover and Crippen name throughout the addenda period.

Alternatively, the defendants argue that the trial court's ruling, that the plaintiff is entitled to share in profits earned during the partnership's final 10 months in business, both circumvented the addenda agreements and the performance of the parties during the addenda periods. The defendants rely on the following addenda language in support of their argument:

> "If partners Crippen, Reid, and Bowen, or [the plaintiff] decide that the above detailed arrangement is not properly working, or is not in the best interests of the Partnership, the parties agree to compensate [the plaintiff] his hours to date and revert to the original Partnership Agreement and Partners Cross Purchase Agreement for remedies."

According to the defendants, this language means that upon reversion, the plaintiff was entitled to hourly compensation only, and not entitled to share retroactively in the profits. The defendants maintain that their argument is strengthened by the fact that during the first two years the addenda operated, the plaintiff only received hourly compensation and no additional profits.

■ We disagree with the defendants' interpretation of the above language, and the argument that their interpretation is strengthened by the actions of the plaintiff during the first two years the addenda operated. That the plaintiff only received hourly compensation during the first two years the addenda operated is of no consequence, since the plaintiff did not choose to revert to the original partnership agreement and "Partners Cross Purchase Agreement" during that time. We believe that the addenda were silent as to the allocation of excess profits upon reversion. The only agreement between the parties in this regard was found in paragraph 11 of the partnership agreement.

Paragraph 11 of the partnership agreement provided that the partners could specially allocate certain profits (referred to as base salaries) at their annual meeting. It further provided that each partner was entitled to an allocation of the excess profits based on his percentage of contribution to the partnership's total capital. Accordingly, the trial court deducted the hourly compensation the plaintiff was entitled to, and the base salaries the other partners were entitled to, from the total profit the partnership generated during its last 10 months in business. The court then allocated the remaining excess profits equally, since each of the four partners contributed equally to the partnership's total capital.

■ Next, the defendants argue that it is inequitable to allow the

plaintiff to share in the partnership's profitability when he agreed to hourly compensation and devoted less than his undivided time to the partnership. Under the addenda, the parties agreed that the plaintiff could devote less than his undivided time to the partnership. They further agreed that the plaintiff had the power to revert to the original partnership agreement and "Partners Cross Purchase Agreement," wherein he was entitled to excess profits. Where there is a partnership agreement, the courts will not attempt to equalize partnership compensation commensurate with services. *Couri v. Couri* (1983), 95 Ill. 2d 91.

■ The defendants next argue that the plaintiff was equitably estopped from sharing in partnership profits earned during the partnership's final 10 months in operation. Estoppel is an affirmative defense which must be pleaded to be available. (*Chicago Budget Rent-A-Car Corp. v. Maj* (1972), 5 Ill. App. 3d 265.) The defendants' affirmative defense of waiver did not amount to a pleading of estoppel, as they claim. An appellant is not permitted to argue on appeal a defense not interposed by his answer. *Ellerby v. Spiezer* (1985), 138 Ill. App. 3d 77.

■ Finally, the defendants take issue with the trial court's determination of the partnership's profit for its final 10 months in business and its application of a 3% bad debt factor. The testimony of the plaintiff and the plaintiff's expert witness supplied the basis for the trial court's determination of these matters. The plaintiff's testimony was based on his summary of the partnership records, which was all the evidence the plaintiff had available to him. The expert's testimony was also based on the plaintiff's summaries. Though the defendants' cross-examination of the plaintiff and the expert showed the testimony to have some possible shortcomings, the defendants did not come forward with contrary evidence. Thus, we find no error in the trial court's determination. Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.