HENRY SUTTON, Plaintiff-Appellant, v. WASHINGTON RUBBER PARTS & SUPPLY COMPANY *et al.*, Defendants (Westinghouse Electric Corporation, Defendant-Appellee).

First District (3rd Division)   No. 87—3636

Opinion filed October 26, 1988.

Michael R. Panter & Associates, of Chicago, for appellant.

Tyrrell & Flynn, of Chicago (Edward J. Szewcyzk, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Henry Sutton, brought an action in negligence, strict

products liability and breach of implied warranty against defendants, Washington Rubber Parts & Supply Company (Washington), General Electric, Inc. (G.E.), Supreme Lighting Corp. (Supreme), and Westinghouse Electric Corp. (Westinghouse). G.E. and Supreme moved for and were granted summary judgments. Plaintiff did not appeal therefrom. Thereafter, Westinghouse moved for and was granted summary judgment. Plaintiff appeals therefrom.

On March 22, 1983, plaintiff, who was employed as a mechanic by McLean Trucking Company (McLean), was attempting to thaw the brakes of a trailer by injecting methanol into the brakeline. Plaintiff was underneath the trailer and was using a "drop light," *i.e.*, a light with a hook at the top and a protective metal guard or cage over the light bulb. While plaintiff was loosening the brakeline to allow the methanol to circulate through it, the methanol blew out of the line onto the light bulb in his drop light, causing the bulb to explode. The explosion ignited a fire which burned plaintiff's hands, neck and face. Neither the light bulb nor any of its remains were ever in plaintiff's possession after the accident.

Plaintiff's amended complaint alleged that either G.E., Supreme or Westinghouse had manufactured the light bulb, identified as a "rough service" bulb, and had sold it to Washington, which, in turn, had sold it to McLean. Supreme's motion for summary judgment was predicated on the affidavit of its president which asserted that Supreme did not sell any light bulbs to Washington before October 1983. G.E.'s motion for summary judgment was predicated on plaintiff's discovery deposition. At his deposition, plaintiff failed to identify any one of the three defendants as the manufacturer and supplier, through Washington, of the light bulb which allegedly caused his injuries. Plaintiff also failed to identify a light bulb manufactured by G.E., which plaintiff allegedly obtained from McLean after his accident, as being identical to the light bulb in his drop light.

In its motion for summary judgment, Westinghouse relied on, *inter alia,* plaintiff's failure to identify the manufacturer of the light bulb and his admission that he knew no one who could identify the manufacturer at his deposition. The trial court granted the motion based on its conclusion that the inferences that could be drawn from the evidence against Westinghouse were no greater than those that could be drawn against G.E. and Supreme. In response to the motion for summary judgment, plaintiff submitted, *inter alia,* an affidavit of Ken Jadzak, employed by McLean in its parts department at the time of plaintiff's accident, attesting to statements made in an unsworn statement to an investigator for G.E. We will consider the merits of

this statement in deciding this appeal, regardless of whether the affidavit complies with Supreme Court Rule 191 (107 Ill. 2d R. 191).

In urging error on the part of the trial court in granting Westinghouse summary judgment, plaintiff claims he raised a clear inference that Westinghouse was the manufacturer of the allegedly defective light bulb. He cites the following as raising that inference.

Plaintiff stated in his affidavit in response to Westinghouse's motion for summary judgment that, on the many occasions he had been in the McLean supply room to obtain light bulbs for use in his drop light, he could recall seeing only Supreme, G.E. or Westinghouse light bulbs. In his statement to G.E., Ken Jadzak stated that McLean purchased its light bulbs from Washington at the time of plaintiff's accident. From Jadzak's statement and his own deposition statement that he was not aware of McLean buying its light bulbs from anyone other than Washington, plaintiff concludes that Washington was the sole supplier of rough service light bulbs to McLean. In answering plaintiff's supplemental interrogatories, Westinghouse admitted sales of rough service light bulbs to Washington "in 1982 and 1983 months prior to the occurrence." Finally, in an unsworn statement, Nick De Los Santos, also a McLean mechanic, stated that a Westinghouse light bulb he had put in his drop light also caused a fire when methanol which he had injected into a frozen trailer brakeline splashed out onto the bulb. He was not underneath the trailer at the time. At his deposition, plaintiff stated that De Los Santos told him this incident occurred three weeks before plaintiff's accident.

We also note that, pursuant to plaintiff's discovery request, Washington produced five invoices reflecting the sale of a total of 60 rough service light bulbs to McLean between May 1982 and February 1983. Because Washington sold the light bulbs under a generic part number, however, it could not determine who manufactured the bulbs shipped to McLean.

Plaintiff concludes from the foregoing that, because only Westinghouse, of the three manufacturer-defendants, admitted selling light bulbs to Washington and because only Washington sold light bulbs to McLean, "it is far more likely than not that Westinghouse was the manufacturer of the bulb which" injured plaintiff. Plaintiff also asserts in his opening brief that the proximity of the De Los Santos incident to his, coupled with Westinghouse's admission, raises a clear inference that Westinghouse manufactured the defective light bulb. However, in his reply brief, plaintiff abandons any reliance on the De Los Santos incident. As such, we will not consider it in this opinion.

■ Summary judgment is proper only where the "pleadings,

depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [movant] is entitled to judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) Summary judgment is a drastic remedy which should be granted only where the movant's right to it is clear and free of doubt. (*Schnabel v. Du Page County* (1981), 101 Ill. App. 3d 553, 428 N.E.2d 671; *Yakupcin v. Baker* (1980), 83 Ill. App. 3d 624, 404 N.E.2d 869.) That is, if the facts admit of more than one conclusion or inference, including one unfavorable to the movant, summary judgment should be denied. *Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 436 N.E.2d 598; *Smothers v. Butler* (1979), 78 Ill. App. 3d 1018, 398 N.E.2d 12.

◼ While a plaintiff is not required to prove his case in responding to a motion for summary judgment, he is required to present facts to support the elements of his claim. (*Technical Representatives, Inc. v. Richardson-Merrell, Inc.* (1982), 107 Ill. App. 3d 830, 438 N.E.2d 599.) In a products liability action, those elements include a link between the product and its alleged manufacturer or supplier. (*Schmidt v. Archer Iron Works, Inc.* (1970), 44 Ill. 2d 401, 405-06, 256 N.E.2d 6, *cert. denied* (1970), 398 U.S. 959, 26 L. Ed. 2d 544, 90 S. Ct. 2173; *Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217, 221, 490 N.E.2d 104.) Moreover, a plaintiff may establish a *prima facie* case through reasonable inferences from circumstantial evidence. However, because liability in a products liability case cannot be based on speculation, guess or conjecture, the circumstances in such a case must justify an inference of probability as distinguished from mere possibility. *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 508, 418 N.E.2d 503; see also *Kramer,* 141 Ill. App. 3d at 222.

◼ Applying these principles here, we conclude that the trial court properly entered summary judgment for Westinghouse.

There is a fundamental flaw in plaintiff's argument that Westinghouse was the most likely of the three manufacturers originally joined as defendants to have produced the allegedly defective light bulb. In so concluding, plaintiff erroneously focuses on the probable culpability of Westinghouse in comparison to that of Supreme and G.E. Plaintiff essentially concludes that because Supreme and G.E. could not have been liable to him, Westinghouse must be liable. However, we believe that, Supreme and G.E. having been awarded summary judgments, the probable culpability of Westinghouse was subject to determination as if it had been the only manufacturer joined as a defendant in this action, *i.e.*, without comparing the likelihood of its culpability to the likelihood of Supreme's and G.E.'s culpability for plaintiff's accident.

So viewing the evidence compels the conclusion that plaintiff failed to raise a genuine issue regarding the identity of Westinghouse as the probable manufacturer of the defective light bulb. Specifically, the mere evidence that Westinghouse sold rough service light bulbs to Washington and that Washington sold such light bulbs to McLean was insufficient, given the character of that evidence, to raise a reasonable inference that Westinghouse probably manufactured the defective light bulb.

The fact that Westinghouse sold rough service light bulbs to Washington, as established by its answers to plaintiff's interrogatories, does not compel the conclusion or necessarily give rise to a reasonable inference that the bulbs supplied by Washington to McLean were probably manufactured by Westinghouse. Plaintiff's amended complaint did not allege, nor does the record otherwise establish, that Washington did not buy rough service light bulbs from other manufacturers. Assuming that Washington did so, which is reasonable given commercial realities, plaintiff alleges no facts regarding, nor does the record otherwise establish, the percentage of rough service light bulbs Washington purchased from Westinghouse. Nor does plaintiff allege, nor the record establish, what percentage of all the light bulbs Washington sold to McLean were of Westinghouse manufacture. Likewise, the invoices produced by Washington reflecting sales of rough service light bulbs to McLean in the months preceding plaintiff's accident do not indicate the manufacture of the light bulbs sold. Moreover, in his statement to the G.E. investigator, Ken Jadzak was unable to identify the manufacturer of the rough service light bulbs which McLean was purchasing from Washington before plaintiff's accident.

Plaintiff cites Jadzak's statement as establishing that Washington was McLean's *exclusive* supplier of rough service light bulbs. In the course of that statement, Jadzak merely stated that McLean bought its light bulbs from Washington. At a later point in the statement, Jadzak was asked whether McLean had other suppliers of rough service bulbs and responded, "Let's see. Washington Rubber. I don't know." Jadzak's statement is thus wholly insufficient to establish that Washington was McLean's exclusive supplier of rough service light bulbs. We find the fact that plaintiff was not aware of McLean buying rough service light bulbs from any suppliers other than Washington likewise inadequate to establish that McLean did not do so. Even assuming the converse, the lack of any evidence establishing that Washington supplied McLean exclusively with Westinghouse light bulbs or, alternatively, establishing the percentage of all the light bulbs either sold to Washington or sold to McLean by Washington which were of

Westinghouse manufacture is fatal to plaintiff's case.

In the final analysis, the pleadings and evidence in this case merely raise the *possibility* that Westinghouse manufactured and supplied, through Washington, the light bulb which allegedly caused plaintiff's accident. That Westinghouse may have been the most likely of the three manufacturers named as defendants to have manufactured the light bulb in question does not, *ipso facto,* establish a likelihood, as a reasonable inference from the evidence, that it did manufacture the light bulb in question.

*Amin v. Knape & Vogt Co.* (1986), 148 Ill. App. 3d 1075, 500 N.E.2d 454, is of no assistance to plaintiff. In *Amin,* the plaintiff was injured when clips supporting laboratory shelves broke, causing the shelves to fall and chemicals stored thereon to spill on the floor. The plaintiff sued the shelving manufacturer, Taylor Manufacturing Company (Taylor), and the manufacturer of the shelf support clips which Taylor supplied with the shelves, Knape & Vogt Company (Knape & Vogt). While Taylor's motion for summary judgment on the ground that the clips which broke were not clips supplied by it or manufactured by Knape & Vogt was denied, Knape & Vogt's motion for summary judgment was granted. Knape & Vogt asserted, like Westinghouse, that the plaintiff had not come forward with any evidence creating a material issue of fact regarding its involvement. The appellate court reversed. It relied upon the facts that all the clips installed had never been replaced, the shelving installer claimed that it had installed the clips provided by Taylor and that Taylor stated that it shipped clips to the laboratory site purchased from Knape & Vogt. *Amin,* 148 Ill. App. 3d at 1077-78.

In *Amin,* there was sufficient evidence to create a genuine issue of fact regarding the identity of the manufacturer of the allegedly defective product, despite contrary evidence. Specifically, there was positive evidence, in the form of affidavits, that the alleged manufacturer's product had been shipped and installed at the plaintiff's place of employment. (*Amin,* 147 Ill. App. 3d at 1077.) No such evidence exists here. In contrast to the situation in *Amin,* the evidence here is insufficient, *ab initio,* to create a genuine issue of fact regarding the identity of Westinghouse as the manufacturer of the defective light bulb, despite the lack of any positive evidence to the contrary.

*Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217, 490 N.E.2d 104, is also unavailing to plaintiff. The *Kramer* court reversed a summary judgment in a products liability action for a manufacturer of aircraft bolts who supplied 90% of all the bolts used by a manufacturer of unassembled airplane kits. Unlike the situation in

*Kramer,* no facts here give rise to any reasonable inference, let alone a 90% probability, that Westinghouse manufactured the allegedly defective light bulb. Moreover, in *Kramer,* the defendant raised a mere possibility of his misidentification as the manufacturer. (*Kramer,* 141 Ill. App. 3d at 222.) In contrast, plaintiff here raised a mere possibility of the identity of Westinghouse as the culpable manufacturer. Such evidence was inadequate to defeat the motion of Westinghouse for summary judgment.

For all of the foregoing reasons, the summary judgment entered by the circuit court of Cook County for Westinghouse is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.