HALLMARK AND JOHNSON PROPERTIES, LTD., *et al.*, Plaintiffs-Appellants, v. WESLEY TAYLOR, Defendant-Appellee.—WESLEY TAYLOR, Plaintiff-Appellee, v. HALLMARK AND JOHNSON PROPERTIES, LTD., Defendant-Appellant (Terrance W. Honan *et al.*, Defendants).

First District (6th Division)   No. 1—89—2999

Opinion filed July 13, 1990.—Rehearing denied August 14, 1990.

Saul R. Wexler, of Chicago, for appellants.

Rieck & Crotty, P.C., of Chicago (Jerome F. Crotty and Thomas M. Cannon, of counsel), for appellee.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Plaintiffs, Hallmark & Johnson Properties, Ltd. (Hallmark & Johnson), and Andreas Berggreen, doing business as Mutual Realty (Mutual Realty), brought this action in chancery against defendant, Wesley Taylor, seeking a declaration of their rights to earnest money deposited by Taylor pursuant to a contract for the purchase of certain real estate. Taylor filed a separate action at law which was consolidated with the plaintiffs' chancery action. The circuit court granted summary judgment in favor of Taylor, finding that the real estate

sales contract had been cancelled and that Taylor was entitled to the earnest money he had deposited under the contract. The trial court also awarded Taylor prejudgment interest. Hallmark & Johnson and Mutual Realty have appealed, contending that the court erred in entering summary judgment in favor of Taylor and in awarding prejudgment interest.

On February 5, 1985, Filip Rotheimer entered into two listing agreements with Hallmark & Johnson for the sale of two multi-unit buildings owned by him in Chicago, Illinois. The agreements provided, *inter alia*, that Rotheimer would pay a commission of 6% of the sales prices if Hallmark & Johnson produced a purchaser who was ready, willing, and able to buy the subject properties. The listing agreements provided further that:

> "BROKER IS AUTHORIZED TO ACCEPT AN EARNEST MONEY DEPOSIT FROM PURCHASER. IF PURCHASER DEFAULTS AND SELLER DECLARES A FORFEITURE OF THE EARNEST MONEY, THE EARNEST MONEY SHALL BE APPLIED FIRST TO PAYMENT OF BROKER'S COMMISSION AND ANY EXPENSES INCURRED, AND THE BALANCE PAID TO SELLER."

In early March 1985, an agent for Mutual Realty, in cooperation with an agent of Hallmark & Johnson, showed the properties to Taylor. On March 7, 1985, Taylor and Rotheimer executed an installment agreement for the sale of the properties under which Taylor was obligated to make a down payment of $100,000 and Rotheimer was to hold a mortgage in the amount of $480,000, based upon a 30-year amortization. Interest on the mortgage was set at 10% for three years, and at 12% for an additional three years, with the balance due in 1991. Paragraph five of the supplementary provisions to the real estate sales contract provided as follows:

> "If this contract is terminated without Purchaser's fault, the earnest money shall be returned to Purchaser, but if the termination is caused by Purchaser's fault, then, at the option of Seller, and upon notice to Purchaser, the earnest money shall be forfeited and applied first to payment of broker's commission and any expenses incurred, and the balance paid to Seller."

Taylor tendered the sum of $30,000 as his earnest money deposit, which was to be held by Hallmark & Johnson in escrow for the benefit of both parties to the sales contract.

The original closing date of March 13, 1985, was postponed by mutual agreement due to a delay in processing the order for title

commitment. When a title report was received showing numerous judgments against Taylor, the parties decided to proceed with a sale on articles of agreement and to place the properties into a land trust.

The closing was rescheduled for April 16, 1985. Although Rotheimer was ready, willing, and able to complete the sale, Taylor failed to appear at the closing because he had been arrested by Federal law enforcement authorities. Two days later, on April 18, 1985, Rotheimer's attorney sent a letter to Taylor's attorney, with copies to Honan and Rotheimer, which stated that his client declared a default in the performance of the contract and that he would exercise his rights under paragraph five of the supplementary provisions to the contract. Neither Taylor nor his attorney responded or objected to this declaration of default and forfeiture.

Rotheimer's attorney also sent a letter on April 18, 1985, to Terrance Honan, the listing broker for Hallmark & Johnson, which stated that "Taylor was not a competent and qualified buyer" and that suit would be filed against Taylor. The letter indicated further that suit might be brought against the brokers and sales personnel if necessary and requested that the brokers waive or compromise their claims to commissions.

After April 24, 1985, Honan had no communications with Rotheimer in connection with the earnest money with the exception of one telephone call regarding the possibility of reimbursement for certain costs incurred by Rotheimer out of the earnest money.

On May 22, 1985, Honan sent a letter on behalf of Hallmark & Johnson to Rotheimer, Taylor, and their respective attorneys advising that "[they had] applied the earnest money deposit in part payment of the broker's commission." Hallmark & Johnson received no response or objection to this letter other than an inquiry by Rotheimer regarding his costs for the title report and survey.

Between June 10, 1985, and July 16, 1985, Hallmark & Johnson disbursed to the appropriate realtors and sales persons the earnest money deposited by Taylor. Seventeen months later, on December 9, 1986, an attorney acting on behalf of Taylor sent a letter to Hallmark & Johnson, its counsel, and Mutual Realty demanding return of the earnest money deposited by Taylor. This letter made reference to a cancellation of the real estate sales agreement executed by Rotheimer and Taylor. The purported cancellation agreement bore the date May 3, 1985, and stated that the parties agreed to cancel the real estate sales contract and provided further that the parties agreed that the earnest money was to be returned to Taylor, less $750 for title charges and attorney fees, $300 for survey, and $2,500

for lost rents incurred by Rotheimer.

Thereafter, Hallmark & Johnson filed its complaint in chancery for declaratory and other relief, and Taylor filed his complaint at law to which Rotheimer filed a counterclaim against Hallmark & Johnson and Honan. The actions were then consolidated in the chancery proceeding.

Rotheimer testified at his deposition that although Taylor's financial statement was not satisfactory, he agreed to reschedule the closing date to April 16, 1985, and to proceed with the sale by installment agreement. Rotheimer stated further that he had not seen or communicated with Taylor since Taylor's arrest in mid-April 1985. Although Rotheimer acknowledged his signature on the May 3, 1985, cancellation of the real estate sales contract, he did not recall when he signed it or whether Taylor's signature already appeared on the document when he signed it. Rotheimer also testified that it was possible that the date on the cancellation was incorrect or that he had signed the document in blank. Exhibit 9 to Rotheimer's deposition was a letter from Rotheimer's attorney to Taylor's counsel dated June 10, 1985. This letter indicated that Rotheimer had signed the cancellation of the contract in triplicate and requested that the documents be signed by Taylor and returned to Rotheimer's attorney.

Taylor testified at his deposition that he did not know whether the cancellation was signed on May 3, 1986, or on June 10, 1985, but stated that his counsel had sent the document to the real estate brokers. Taylor could not recall how many requests he had made for the return of his earnest money or whether any demand letters had been sent. Taylor stated further that he had received a copy of the April 18, 1985, letter from Rotheimer's attorney which declared a default and forfeiture of the contract. He also testified that he had received a copy of the May 22, 1985, letter from Honan which stated that pursuant to the declaration of forfeiture, the earnest money had been applied toward payment of the brokers' commissions.

Honan testified at his deposition that he had no conversations with Taylor after his arrest, and his only communication with Rotheimer after April 24, 1985, involved reimbursement for the cost of the survey incurred by Rotheimer. He stated further that the commissions were paid to the appropriate brokers and sales people between June 10, 1985, and July 16, 1985. Honan also testified that Rotheimer and Taylor never advised him that the contract had been cancelled and that the first time he saw a copy of the purported cancellation agreement was after the litigation had been commenced in February 1987.

After a hearing on the parties' cross-motions for summary judgment, the trial court entered judgment in favor of Taylor, finding that there was no question of material fact that Rotheimer and Taylor had agreed to release each other from the contract and that Taylor was entitled to the return of the earnest money. The court also *sua sponte* granted Taylor leave to amend his complaint to add a claim for prejudgment interest. The court did not grant plaintiffs leave to amend their complaint to include allegations of equitable estoppel, and plaintiffs did not request leave to amend. After an additional hearing, the court awarded Taylor prejudgment interest and entered findings pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). Hallmark & Johnson and Mutual Realty appeal.

Hallmark and Johnson and Mutual Realty assert on appeal that the trial court erred in finding that there was no genuine issue of material fact that Taylor was entitled to the return of the earnest money as a matter of law. We agree.

It is well established that a broker's commission is earned once a ready, willing, and able buyer is produced. (*Wilson v. Mason* (1895), 158 Ill. 304, 42 N.E. 134; *United Investors, Inc. v. Tsotsos* (1985), 132 Ill. App. 3d 175, 178, 477 N.E.2d 40, 42.) Where a seller of real estate enters into an enforceable contract of sale with a purchaser procured by a broker, the readiness, willingness and ability of the purchaser is no longer open to question and the broker's right to compensation accrues whether or not the sale is completed. *United Investors*, 132 Ill. App. 3d at 178, 477 N.E.2d at 42; *Western Pride Builders, Inc. v. Zicha* (1974), 23 Ill. App. 3d 770, 773, 320 N.E.2d 181, 184.

In the instant case, Rotheimer had agreed to hold the mortgage for Taylor, and the sale of the properties was not contingent upon Taylor's ability to obtain financing. Absent competent evidence to the contrary, Hallmark & Johnson and Mutual Realty earned their commissions when they produced a ready, willing, and able buyer. This was accomplished when Rotheimer and Taylor executed the real estate sales contract on March 7, 1985, despite the fact that the sale was never completed. Two days after Taylor failed to appear at the second closing date, Rotheimer's attorney sent a letter to Taylor's attorney, with copies to his client and to Honan, which declared a forfeiture of the contract and stated that Rotheimer would exercise his rights under paragraph five of the supplementary provisions to the contract. Taylor did not respond to the declaration of default and forfeiture. Acting upon the declaration of default and forfeiture by Rotheimer, Hallmark & Johnson provided the parties with written no-

tice on May 22, 1985, that the earnest money had been applied toward payment of the brokers' commissions. Hallmark & Johnson received no response or objection to this letter, and the earnest money was actually disbursed to the appropriate brokers between June 10, 1985, and July 16, 1985. Based upon the information available to it at the time, the conduct of Hallmark & Johnson was in accordance with the terms of the listing agreement and the real estate sales contract. Hallmark & Johnson was not advised that the contract had been cancelled until December 1986. As Hallmark & Johnson have argued before this court, if the earnest money had been returned to Taylor after April 18, 1985, they would have breached their fiduciary duty to Rotheimer. See *United Investors*, 132 Ill. App. 3d 175, 477 N.E.2d 40.

Although Taylor contends, and the trial court found, that the real estate sales contract had been cancelled, the evidence in the record indicates that this was a disputed question of fact. Both Rotheimer and Taylor testified that they had no further dealings with each other after Taylor's arrest in mid-April 1985. Honan, the broker for Hallmark & Johnson, testified that he never received a copy of the purported cancellation agreement from Rotheimer or Taylor and first learned of its existence after this litigation had been commenced in February 1987. Honan received no response or objection to his letter of May 22, 1985, which advised the parties that the earnest money had been applied toward payment of the brokers' commissions. It is logical to assume that if the contract had indeed been cancelled, either Taylor or Rotheimer would have notified the real estate brokers and would have challenged the right of the escrowee to disburse the earnest money as payment for commissions. Yet, the brokers were not advised of the cancellation of the contract and no challenge to the earnest money disbursement was made until December 9, 1986, approximately 1½ years after the forfeiture and disbursement of the funds.

In addition, neither Rotheimer nor Taylor could actually recall when the cancellation had actually been signed, and Rotheimer indicated that he may have signed the document in blank. The document bears the date May 3, 1985, but the letter to Taylor's attorney from Rotheimer's attorney and dated June 10, 1985 (exhibit 9 to Rotheimer's deposition), clearly reflects that as of that date, only Rotheimer had signed the cancellation. The letter requests that counsel procure Taylor's signature in triplicate and return all of the documents to Rotheimer's attorney. Consequently, even if the parties actually did agree to cancel their agreement, it cannot legitimately be argued that the contract had been cancelled prior to the disbursement of the earnest money by Hallmark & Johnson. The rights of the par-

ties were established and fixed when the forfeiture was declared on April 18, 1985, and the subsequent cancellation of the contract was inconsistent with and contrary to Rotheimer's election to declare a forfeiture. (See generally *Vogel v. Dawdy* (1985), 107 Ill. 2d 68, 481 N.E.2d 679; *Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 311 N.E.2d 673.) In light of the unique set of facts before us, we believe that common sense dictates that the parties to the contract should have corrected any misconception as to the status of the contract on the part of the brokers in mid-1985 and certainly prior to December 1986.

■ Taylor's claim that Hallmark & Johnson acted improperly because it was not in privity with Taylor is without merit. Although Hallmark & Johnson was not a signatory to the real estate sales contract, it was a party to the escrow agreement implicit in the language of the contract, and its right to a commission was controlled by the terms of that contract. Thus, Taylor cannot fairly claim that Hallmark & Johnson was not entitled to its commission merely because it was not a party to the sales agreement.

■ Taylor also claims that the declaration of forfeiture was ineffective. He initially contends that the letter to his attorney declaring the forfeiture was inadequate under the terms of the contract which required that notice be given to the buyer. This assertion must be rejected where, as here, Taylor testified at his deposition that he received a copy of the letter. Taylor next contends that the letter was insufficient because it merely refers to Rotheimer's intention to declare a forfeiture in the future. This argument is also without merit. The letter explicitly declares a default in the performance of the contract as of April 18, 1985, and unequivocally states that Rotheimer will exercise his rights under paragraph five of the supplementary provisions to the contract. *Dahm, Inc. v. Jarnagin* (1985), 133 Ill. App. 3d 14, 16-17, 478 N.E.2d 641, 643-44; *Perino v. Protect-All-Shelters, Inc.* (1970), 128 Ill. App. 2d 477, 483-84, 262 N.E.2d 349, 352-53.

■ Although Taylor correctly argues that where the theory of equitable estoppel is not pleaded, it is waived (*Hoover v. Crippen* (1987), 163 Ill. App. 3d 858, 864, 516 N.E.2d 722, 726; *Orchard Brook Home Association, Inc. v. Joseph Keim Land Development Corp.* (1978), 66 Ill. App. 3d 227, 233, 382 N.E.2d 818, 822-23), this does not alter the fact that Rotheimer had declared a default and forfeiture of the contract and that Hallmark & Johnson acted in accordance with the terms of the listing agreements and the real estate sales contract.

■■ Summary judgment is proper only where the pleadings,

depositions, admissions, and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2–1005.) Summary judgment is a drastic remedy to be granted only where the movant's right to it is clear and free from doubt. (*Sutton v. Washington Rubber Parts & Supply Co.* (1988), 176 Ill. App. 3d 85, 88, 530 N.E.2d 1055, 1057.) If the facts will allow more than one conclusion or inference, summary judgment should be denied. (*Sutton,* 176 Ill. App. 3d at 88, 530 N.E.2d at 1057.) The respondent need not prove his case at the summary judgment stage, but he may be required to present evidence which demonstrates the existence of a triable issue of fact. (*Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217, 221, 490 N.E.2d 104, 107.) Inferences which may reasonably be drawn from the evidence are to be resolved in favor of the respondent. *Kramer,* 141 Ill. App. 3d at 221, 490 N.E.2d at 107.

■ In the instant case, the pleadings, deposition testimony, admissions, and affidavits indicate that there is a genuine issue of material fact as to whether the real estate contract was cancelled and whether the cancellation was executed prior to the disbursement of the earnest money by Hallmark & Johnson. Because fair-minded persons could draw differing inferences from the facts presented, summary judgment should not have been entered in favor of Taylor. *Amin v. Knape & Vogt Co.* (1986), 148 Ill. App. 3d 1075, 1078, 500 N.E.2d 454, 456.

In view of our holding that summary judgment was improperly granted, it necessarily follows that the order granting prejudgment interest must also be reversed.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

McNAMARA and EGAN, JJ., concur.