DAVID YORK, Plaintiff-Appellee, v. JOHN LUNKES, d/b/a Illinois Battery Manufacturing Company, Defendant-Appellant and Third–Party Plaintiff-Appellant (Steve Onassis *et al.*, Third–Party Defendants-Appellees).

First District (5th Division)   No. 1–88–1494

Opinion filed September 29, 1989.

August A. Grundei, of Chicago, for appellant.

Williams & Montgomery, Ltd., of Chicago (Anita L. Volgyi, Barry L. Kroll, Anthony J. Kiselis, and Lloyd E. Williams, Jr., of counsel), for appellee East Penn Manufacturing Company, Inc.

Galliani & Doell, Ltd., of Chicago (Thomas J. Doell, of counsel), for appellees Gould, Inc., and GNB Batteries, Inc.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant and third-party plaintiff, John Lunkes, d/b/a Illinois Battery Manufacturing Company (Lunkes), filed this appeal from various orders of the trial court granting summary judgment for third-party defendants, East Penn Manufacturing Company, Inc. and Gould/

GNB Batteries, Inc. Lunkes also appeals from an order denying him summary judgment against plaintiff, David York. This latter order is not part of this appeal since it is not a final order under either Supreme Court Rule 304(a) or Rule 308 (107 Ill. 2d Rules 304(a), 308).

The following facts are relevant to this appeal. Plaintiff David York filed suit against Lunkes alleging that he was injured when an automobile battery exploded on January 21, 1979. Lunkes then filed third-party complaints against Steve Onassis (the battery owner), East Penn, Gould, and Seymour Brown, d/b/a Seymour Standard Service (plaintiff's employer), seeking indemnity and contribution should he be held liable to plaintiff.

Onassis owned a 1967 Mercedes-Benz automobile for which he had purchased a new battery from and had it installed by an employee of Illinois Battery several months prior to plaintiff's accident. The injury occurred as plaintiff was attempting to jump start the car in Onassis' garage. The battery exploded and was completely destroyed, leaving no physical evidence to aid in identifying its manufacturer or the cause of the explosion.

Onassis stated in his deposition that the new battery was red but was uncertain whether it had filler caps on top or was a maintenance-free model. No receipt for the sale of the battery was produced. Plaintiff's deposition revealed that he had worked for Seymour's Standard for about five years. Plaintiff described a specific procedure that he was trained to follow for winter jump starts, e.g., check to see if battery was frozen. On the day of his accident, plaintiff followed this procedure but could not check for a frozen battery because it was a totally sealed, maintenance-free battery. He did not attach the battery cables to a ground because there was not enough room in the garage. After failing to start the car, plaintiff simultaneously removed both cables from the battery terminals. At this time, he saw a spark and turned his head away as the battery exploded. He remembered that the battery was sealed with no filler caps and that the terminals were on the side, but did not recall the color of the battery or seeing any manufacturer's name on it.

The record also demonstrates that Onassis' car could take only batteries in BCI (Battery Council International) Group sizes 24F, 27F, and 30HR. At no time prior to plaintiff's accident did East Penn manufacture any maintenance-free batteries in these groups. It was also shown that the only suitable battery manufactured by Gould had a blue top with translucent sides and top terminals and also was not maintenance-free. The sales manager at that time for East Penn stated that during visits to Illinois Battery, he noticed that Lunkes' in-

ventory included a red, maintenance-free battery with side terminals, manufactured by a third company, that would fit the Mercedes-Benz.

Lunkes submitted no records regarding sale of the battery nor could he identify the employee who sold it to Onassis. The only evidence as to whether the battery was defective came from Mr. John Stilson, plaintiff's expert, who stated that it was defective because it either (1) did not have spark arresters, or (2) if it did have spark arresters, they were not functioning properly. Both East Penn and Gould batteries were manufactured with spark arresters at that time.

Based on these facts, the trial court found that Lunkes had produced no evidence indicating that the exploded battery was manufactured or sold by either East Penn or Gould. The court specifically stated that it was ruling only on the narrow issue as to whether there was any evidence linking East Penn or Gould to the Onassis battery and declined to address the factual question regarding any defect in the battery. Consequently, we will not consider East Penn's arguments concerning its supplemental and independent summary judgment motion on this second issue. This appeal followed the court's finding that the summary judgment orders in favor of East Penn and Gould (not including East Penn's supplemental motion) were final and appealable.

■ On appeal, Lunkes argues that summary judgment was inappropriate since the evidence shows that one out of the two manufacturers supplied a defective battery. He relies on recent case law which shifts the burden of proof from a plaintiff to a defendant manufacturer in product liability cases where it is impossible to specify a particular manufacturer or producer of a defective product. In *Smith v. Eli Lilly & Co.* (1988), 173 Ill. App. 3d 1, the court used a theory of market share liability to compensate plaintiffs where a product, proved to be harmful (DES) many years after its use, was manufactured in the same manner by many different manufacturers. To escape liability in such a case, a manufacturer defendant would have to establish certain factors, *e.g.*, that it did not produce or market the particular drug taken by plaintiffs' mothers; it did not market the drug in the particular geographic area. The same situation does not exist in the present case. Batteries made by different manufacturers are readily distinguishable from one another. Furthermore, all batteries are not "defective," as the drug DES was determined to be 30 years after being ingested by the plaintiffs' mothers in *Smith*.

We must also disagree with Lunkes' reliance on *Amin v. Knape & Vogt Co.* (1986), 148 Ill. App. 3d 1075, where a shelf manufacturer's affidavits, with accompanying purchase receipts and packing slips,

stated that the defendant was its only supplier of the defective product (shelf clips). Other affidavits supported the manufacturer and the court found that defendant's rebuttal affidavits raised a question of fact so as to preclude summary judgment. The case of *Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217, is also distinguishable from the case at bar. In *Kramer*, the manufacturer of the defective product (airplane bolts) was known. However, there were two possible distributors of the indistinguishable bolts—one of which supplied 90% of the bolts to the aircraft manufacturer. The court held that this circumstantial evidence sufficiently supported an inference that the 90% distributor supplied the allegedly defective bolts so as to preclude summary judgment.

■ These cases cited by Lunkes are inapposite to the present case. Batteries are not indistinguishable from one another. Moreover, uncontroverted evidence in this record indicates that neither East Penn nor Gould manufactured an appropriate battery for the Mercedes-Benz that fit the descriptions given by plaintiff or Onassis. A plaintiff is not required to prove his case in responding to summary judgment motions, but he is required to present facts that support the elements of his action. (*Sutton v. Washington Rubber Parts & Supply Co.* (1988), 176 Ill. App. 3d 85.) In products liability actions, one must show that injury resulted from an unreasonably dangerous condition of the product and that the condition existed when the product left the defendant's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612.) In other words, a plaintiff must identify the supplier of the product and establish a causal connection between the injury and the product. *Schmidt v. Archer Iron Works, Inc.* (1970), 44 Ill. 2d 401.

■ Lunkes, as a third-party plaintiff, has failed to proffer any evidence, direct or circumstantial, that even remotely supports an inference that either East Penn or Gould manufactured the battery sold to Onassis. A fact is not established from circumstantial evidence unless the circumstances or events are so related to each other as to make the conclusion the only probable, not possible, one that can be drawn from them. (*Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506.) Here, Lunkes' assertions are mere speculation, unsupported by evidence; thus, his "one out of two" argument must fail.

■ Lunkes' second contention that East Penn and Gould made a judicial admission that a genuine issue of material fact exists as to whether the battery was maintenance-free is without merit. After reading the entire record, it is clear that the deposition testimony by Onassis, referred to by Lunkes, does not create a factual question, but rather indicates that Onassis was not certain as to the location of the

terminals or whether the battery was maintenance-free. The deposition, read in its entirety, merely reveals that Onassis was unsure as to whether it was maintenance-free or the location of the terminals. He was, however, certain that the battery was red, and plaintiff was certain that it was maintenance-free and had side terminals. Neither deponent contradicted the other. Thus, no fact issue was raised.

We must mention two motions filed by plaintiff York three days before oral arguments, in which he requests this court to dismiss Lunkes' appeal of denial of his motion for summary judgment against York, and to refrain from ruling on East Penn's supplemental motion for summary judgment. We are denying plaintiff's motions as we have addressed these issues in our opinion, and thus, there is no need to consider the third-party defendants' objections based on proper procedure and standing.

Accordingly, and for the above reasons, the orders granting summary judgment against Lunkes and in favor of East Penn and Gould are affirmed.

Affirmed.

PINCHAM and COCCIA, JJ., concur.