DOLORES SCHMITT, Plaintiff-Appellant, v. CRAIG MERTEL, Defendant
(James K. Mueller, Defendant-Appellee).

First District (6th Division)   No. 1—89—3101

Opinion filed January 11, 1991.

Erwin Cohn & Associates, of Chicago (Charles A. Cohn, of counsel), for
appellant.

Querrey & Harrow, Ltd., of Chicago (Timothy J. Fagan, Susan F. Zwick, and Michael Resis, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Dolores Schmitt (Schmitt), appeals the entry of summary judgment in favor of the defendant, James K. Mueller (Mueller), arising out of a motor vehicle collision on February 4, 1983. The collision involved three vehicles: a Dodge Dart driven by Lawrence Garrett; a Toyota pickup truck owned by Craig Mertel; and a Buick Regal owned by Mueller. Neither Craig Mertel nor Lawrence Garrett is a party to this appeal.

Schmitt was riding as a passenger in the car driven by Lawrence Garrett when it collided with the rear of Mertel's pickup truck which was parked in the curb lane of East River Road in Chicago. The impact of the collision pushed Mertel's pickup truck into the rear of Mueller's car, which was also parked in the curb lane, ahead of Mertel's pickup truck. Schmitt alleged that, while traveling south on East River Road in Chicago, Garrett was caused to collide with each of the defendants' vehicles which they carelessly, negligently and illegally parked on the west side of the road at approximately 5231 North East River Road.

Mueller and Mertel separately answered Schmitt's complaint, denying any negligence. Additionally, they each filed third-party complaints for property damage and contribution against Garrett.

On January 29, 1987, the court ordered that both the plaintiff and the defendants were barred from having any expert witnesses testify; the court closed discovery on March 12, 1987.

After discovery was closed, both Mueller and Mertel filed motions for summary judgment which they supported with excerpts from the depositions of the parties. Those depositions, in substance, are as follows.

Mertel testified that he parked his truck on the west side of East River Road while it was still daylight. Two vehicles were parked in front of his truck at the time he parked; no one was parked behind him. He returned after the accident to discover that Garrett's vehicle had pushed his truck up over the curb and into Mueller's car which had, in turn, been pushed into another car in front of Mueller's car. Garrett's vehicle was not completely behind him; the left side of the car extended further into the street than the truck; approximately 60% of the truck was up over the curb.

Mueller testified that he parked his Buick Regal on the west side of East River Road across from his house at approximately 11:15 p.m.

Seven or eight other cars were parked in the vicinity. He did not leave on any lights in his car. The road was being widened to provide for four lanes of traffic, two in each direction. There were two lanes of traffic, one in each direction, and an extra lane. The shoulder off the road was under construction. The road was straight and dry where he parked. He did not believe there was any fog. After he had been in his house about 10 minutes, he heard the sound of a crash. He did not hear the screech of brakes before the impact. He found the front end of Garrett's car touching the rear of Mertel's truck. Garrett told Mueller that he had just not seen the truck; he said that he drove down the street everyday and never saw any parked cars.

Schmitt testified that she was a passenger in Garrett's car traveling southbound in the curb lane of East River Road. Garrett was not wearing glasses at the time, and Schmitt had never seen Garrett wear glasses. She did not see any cars parked along the west side of River Road. She knew that signs prohibited parking on either side of the street. The speed limit was around 40 miles per hour, and Garrett was driving between 30 or 40 miles per hour. She was looking in her purse at the time of the impact. She never saw the truck before impact. She never heard any squealing tires or brakes. She did not know whether they slowed up at all before the accident; she was not paying attention. Her head hit the dash as she went down. She also hit her arms, elbows, legs, knees and back. Although she was not knocked unconscious, she later blacked out a couple of times. She thought that the front passenger side of Garrett's car hit the rear of the truck more than the direct front of the car. Garrett's car stopped as it smashed into the rear of the truck (rather than continue moving on "away from it").

Garrett testified that he and Schmitt ate dinner at a restaurant with a few friends, and Garrett recalled consuming six ounces of white wine. He was neither intoxicated nor tipsy. He was not wearing glasses at the time of the accident, but after the accident he obtained glasses to see distant objects. Before the accident he had been prescribed two medications: one was for his back; one was for his heart. He was familiar with the area where the accident occurred. A white truck and a car ahead of the truck were parked on the west side of the street that night. He did not recall when he first noticed those two parked vehicles. It was very dark; there were forest preserves and no streetlights. He hit one of the two cars that were in front of him; he hit the one parked car that was behind the other. It was the first car in front of him. Three cars were involved in the accident: Garrett's car; the truck which he hit; and, he guessed, that the truck

hit the car in front of it. There was only one impact between his car and the truck; his car did not bounce back and forth to strike the truck more than once. At the time of the impact, his car was traveling the speed limit; he felt he was going about 35 miles per hour. He did not know the distance between the front of the truck and the rear of the third vehicle. He did not know the position of the third vehicle and the truck after the accident.

On March 29, 1989, the judge denied Mertel's motion for summary judgment but granted Mueller's motion. The judge emphasized the testimony of the driver that he hit the truck and stopped. The judge was persuaded that the truck alone then moved forward to hit Mueller's car.

On April 24, 1989, the plaintiff filed a motion to reconsider the summary judgment in favor of Mueller. The plaintiff presented an unsigned and incomplete copy of the police report which purportedly indicated the position of the vehicles after the accident.

Mueller also presented additional deposition excerpts which revealed that Mertel's truck was not drivable after the accident; it was towed from the scene; it was "totaled."

Mueller also testified that after the accident he saw Mertel's truck up against the rear end of his car. The vehicles which were parked in front of him before the accident were still there. The front hood of Garrett's car was touching the truck. The rear end of Mueller's car was damaged in the accident, but it was drivable.

At the motion to reconsider the plaintiff's attorney argued that, given the split seconds involved in the collision, two impacts could have been perceived as one; the question of whether there were two separate collisions which, as a sensory perception, the plaintiff perceived as a single collision was a jury question. Mueller's attorney again argued that, based on the testimony of the driver, Mueller's car could not have acted as an obstruction increasing the impact to the plaintiff because there was only one impact after which Garrett's car stopped. The judge continued the hearing of the plaintiff's motion to October 18, 1989.

On that date the plaintiff sought leave to file an affidavit and report from a newly disclosed engineering expert, Ronald L. Ruhl, in support of his motion to reconsider. Ruhl stated that, within a reasonable degree of reconstruction certainty, the presence of Mueller's vehicle was a proximate cause of the plaintiff's injuries because its presence increased the intensity and/or extensivity of the plaintiff's impact within Garrett's vehicle and, thereby, contributed to her injuries. His opinion was based on the assumption that Mueller's car

was parked from two to six feet in front of Mertel's truck. It was also based on the assumption that Garrett's car was "in direct contact with [Mertel's truck] as the [truck] impact[ed] the [Mueller car]."

The judge allowed the plaintiff leave to file Ruhl's affidavit and report over Mueller's objections, which included the argument that both sides had been barred from introducing expert testimony. The judge, nevertheless, denied the plaintiff's motion to reconsider.

■ The rules governing summary judgment have been repeated so often citation is unnecessary: the party seeking summary judgment must affirmatively show that there is no triable issue of fact; and the evidence must be construed strictly against the moving party and liberally in favor of the opponent. The plaintiff argues that, based on the evidence, the judge could not determine, as a matter of law, that the presence of Mueller's vehicle was not a contributing proximate cause of the plaintiff's injuries. He maintains that the evidence indicated that Mueller's vehicle increased the force of the impact against the vehicle carrying the plaintiff and, thereby, aggravated her injuries.

The plaintiff's theory of liability rests on her contention that Garrett's car remained in contact with Mertel's truck as the truck struck Mueller's car. Because Mertel's truck struck Mueller's car, Mueller's car acted as an obstruction which, in turn, increased the intensity of the impact to the plaintiff. There were, she says, two collisions: the first with Mertel's truck, and the second with Mueller's car; the two collisions, however, were felt as one.

The plaintiff invokes "Newtonian" laws of physics, without specifying which laws, to establish a "fact" upon which her claim depends. We take judicial notice that there are three Newton's Laws of Motion.[1] She points to the testimony of Mueller that the front hood of Garrett's car was touching Mertel's truck and Mertel's truck was "up against" the rear end of Mueller's car. From this evidence the plaintiff argues that a fact finder could reasonably conclude that the forward motion of Garrett's car continued until it was impeded by the collision of Mertel's truck with Mueller's car.

The record upon which the plaintiff depends consists of a copy of

[1]Newton's Laws of Motion are as follows:

(1) A body in motion remains in uniform motion in a straight line unless acted upon by an external force; (2) the acceleration of a body is directly proportional to the applied force and is in the direction of the straight line in which the force acts; and (3) for every force there is an equal and opposite force or reaction. See Webster's Third New International Dictionary 1280 (1981).

a police report; excerpts of certain deposition testimony; and Ruhl's affidavit and report.

The police report was not only unsigned and incomplete but clearly represented inadmissible hearsay. Even if it were to be considered, it is of no benefit to anyone; it does not add anything that was not already established; and it shows only the positions of the vehicles.

The deposition testimony revealed that Garrett never investigated the position of the vehicles after the accident and he knew nothing of their position before the accident. The plaintiff testified that Garrett's car *stopped* as it smashed into the rear of Mertel's truck. Garrett testified that there was only one impact.

■ We do not find Ruhl's report helpful to the plaintiff's case. In our judgment the affidavit and report of Ruhl should not have been permitted to be filed. As Mueller points out, the report came "too late" since it was filed after an order had been entered barring the use of expert testimony. In addition, it contains argumentative conclusions in violation of Supreme Court Rule 191. (107 Ill. 2d R. 191.) Even assuming it was timely filed, it is entitled to no weight. Ruhl's opinion was based entirely upon the hypothetical assumption that Mertel's truck was parked between two and six feet behind Mueller's car. Yet, as previously noted, the record is completely devoid of any facts that support that assumption. In this regard, we disagree with the plaintiff's statements in her briefs that the distance between Mueller's car and Mertel's truck was a "few feet." The report also begs the question of whether Garrett's car was in contact with Mertel's truck when the truck struck Mueller's car. The opinion of an expert is of value only when it is based upon and in harmony with facts which are capable of verification by the court; and where a factual basis is lacking, the opinion is entitled to little weight. *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 179, 298 N.E.2d 289.

Mueller emphasized the testimony of the plaintiff and Garrett that there was only one impact and that Garrett's car stopped at the time of impact. The plaintiff asks us to ignore that testimony and stresses the testimony that Mueller's car was touching Mertel's truck and Mertel's truck was up against Garrett's car. There is nothing in Ruhl's report or anywhere else in the record explaining the application of Newton's Laws of Motion to the facts in this case. Nor has the plaintiff made any such explanation of their application in her briefs. We acknowledge that it is possible that the accident occurred in the manner argued by the plaintiff; but, it is just as possible that it did

not occur in that manner. The plaintiff's attorney conceded in oral argument that it was possible that the Mertel vehicle could have bounced back into the Garrett vehicle. Similarly, it is possible that Mueller's car bounced back into Mertel's truck. In short, a possibility that the accident occurred in the manner argued by the plaintiff is not enough.

Since no one could testify to the distances between the cars and the sequence of the impacts, the plaintiff's theory of liability is based on circumstantial evidence. Although the plaintiff was not required to prove her case in responding to the summary judgment motion, she was required to present facts that support the elements of her action. A fact is not established from circumstantial evidence unless the circumstances or events are so related to each other as to make the conclusion the only probable, not possible, one that can be drawn from them. (*York v. Lunkes* (1989), 189 Ill. App. 3d 689, 545 N.E.2d 478.) It is our judgment that the circumstantial evidence, as a matter of law, does not establish a probability of the conclusion argued by the plaintiff. If the evidence before us were before a jury, the judge would be required to direct a verdict in favor of Mueller. Any verdict for the plaintiff would necessarily be based on speculation. Therefore, the grant of summary judgment was proper. See *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.

The defendant has also argued that summary judgment was proper because, he maintains, the plaintiff could not establish whether her injuries were aggravated by the collision with Mueller's vehicle and because Mueller could not reasonably foresee that his car would be involved in the accident and contribute to the plaintiff's injuries. In view of our holding, it is unnecessary to discuss these alternative grounds advanced by the defendant.

The order granting summary judgment in favor of Mueller is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and McNAMARA, J., concur.